LARRY, a minor by her Guardian ad Litem, Marjan R. Kmiec, Plaintiff-Respondent, v. COMMERCIAL UNION INSURANCE COMPANY, and another, Defendants-Appellants.

Supreme Court

*No. 76–423. Submitted on briefs March 26, 1979.— Decided May 1, 1979.*
(Also reported in 277 N.W.2d 821.)

For the appellants the cause was submitted on the brief of *Alvin A. Stack, Simarski, Goodrich & Stack* of Milwaukee.

For the respondent the cause was submitted on the brief of *Marjan R. Kmiec* and *Richard A. Sachs, Jr.,* both of Milwaukee.

CONNOR T. HANSEN, J. This action was commenced on behalf of Carla Larry, a minor, to recover damages sustained by Carla for a personal injury she suffered while attending Great Zion Day Care and Nursery.

The accident occurred late in the afternoon on May 6, 1975, Carla's second day at the day care center. She was two years, three months old at the time. Although no witness to the accident was able to testify at trial, Sharon Thacker, the director of the day care center and a teacher there at the time, testified as to what the children told her.

Carla had gone to the restroom adjoining the classroom and another girl, about four or five years of age, in attempting to assist Carla had picked her up and accidentally dropped her. Carla struck her chin, apparently on a metal hinge on the arm of a child's commode. The two

girls were the only persons in the restroom at the time of the accident.

Carla was taken by ambulance to the hospital. Dr. Alan L. Pohl, a plastic surgeon, testified that Carla sustained a two-inch cut on the right side of her chin which was deep enough to expose her lower jawbone. He repaired the cut under a local anesthetic. He said the injury did not cause any permanent impairment of function, but that the scar that resulted would be permanent. He said he could not improve the scar's appearance with further surgery. The jury was allowed to view the scar.

Carla was released following the surgery. Her mother kept her home for the next eight days, then accompanied her on a day care center field trip the following Thursday and left her at the center the following Friday. She said the cut was sensitive for several weeks and that she had to watch Carla carefully to see that she didn't bump her chin while it was healing. She secured a second and independent medical opinion which confirmed the opinion of Dr. Pohl regarding the possibility of improving the scar's appearance with further surgery. She said Carla was aware of the scar and showed it to friends.

It was stipulated that the Great Zion Day Care and Nursery was a licensed facility. Jesse N. Adams, a day care licensing supervisor for the Department of Health & Social Services, Division of Family Services, testified concerning the statutory and Wisconsin Administrative Code regulations applicable to day care centers. She testified that when she visited the day care center on February 25, 1975, she found that one qualified teacher was taking care of 18 children, and that this did not meet the staff/child ratios established by the regulations. The center was subsequently informed of its noncompliance, specifically that the Commando volunteers could not be considered in meeting staff/child ratios. She said the center was not in compliance on May 6, 1975, the day

of the accident, since the teacher's report indicated that only one qualified teacher was caring for 14 children at the time of the accident. She further testified there were no regulations requiring that children be accompanied to the restroom.

Sharon Thacker testified that at the time of the accident she was the only adult present in Carla's schoolroom and that she was then caring for 14 children. She said the janitor, fifteen or sixteen years of age, and a Commando volunteer, seventeen years of age, were cleaning up in the adjoining classroom. It was her further testimony that there was no day care center rule requiring the children to ask permission to go to the restroom; however, they were told to do so. She also testified that it was the general policy of the center to have someone accompany the children to the restroom if several of them went at the same time, and that they also accompanied the smaller children. In this instance Thacker said she did not see Carla or the other girl leave the classroom.

Reverend Johnnie C. Robinson, the minister of Great Zion Church and administrator of the day care center, testified. A portion of his deposition was read into evidence in which he had said that it was necessary for a teacher to accompany a child who was not old enough to go alone to the restroom. The record reflects that Carla was toilet trained.

In a special verdict the jury found that the day care center was not negligent in the supervision of the use of lavatory facilities at the time of the accident and assessed Carla's damages at $750.

The trial court granted plaintiff's motion for a new trial and the defendants appeal from the order granting a new trial.

The single issue on this appeal is whether the trial court abused its discretion in granting the plaintiff-respondent a new trial.

Section 805.15(1) and (2), Stats., relating to the granting of a new trial by the trial court, provides:

"805.15 **New trials.** (1) MOTION. A party may move to set aside a verdict and for a new trial because of errors in the trial, or because the verdict is contrary to law or to the weight of evidence, or because of excessive or inadequate damages, or because of newly-discovered evidence, or in the interest of justice. Orders granting a new trial on grounds other than in the interest of justice, need not include a finding that granting a new trial is also in the interest of justice.

"(2) ORDER. Every order granting a new trial shall specify the grounds therefor. No order granting a new trial shall be valid or effective unless the reasons that prompted the court to make such order are set forth on the record, or in the order or in a written decision. In such order, the court may grant, deny or defer the awarding of costs."

This court has repeatedly said that a trial court's decision to grant a new trial will not be disturbed on appeal in the absence of a clear showing of abuse of discretion. *Hillstead v. Shaw,* 34 Wis.2d 643, 648, 150 N.W.2d 313 (1967); *Van Gheem v. Chicago & N. W. R. Co.,* 33 Wis.2d 231, 236, 147 N.W.2d 237 (1967); *Schlag v. Chicago, M. & St. P. R. Co.,* 152 Wis. 165, 170, 139 N.W. 756 (1913). On review of such an order this court will look not for evidence to support the jury findings but rather for reasons to sustain the order of the trial court granting a new trial. *Loomans v. Milwaukee Mut. Ins. Co.,* 38 Wis.2d 656, 662, 158 N.W.2d 318 (1968); *Van Gheem, supra,* at 236. The order may incorporate an oral decision which has been transcribed and filed. *Loomans, supra,* at 660, 661; *Flippin v. Turlock,* 24 Wis.2d 49, 53, 127 N.W.2d 822 (1964). In *Loomans, supra,* at 661, this court said that the detail of reasons supporting the order for a new trial would vary in accordance with the reasons

relied upon by the trial court but must set forth more than a statement of ultimate conclusion.

Here the trial court stated that the two most important grounds in plaintiff's motion were inadequate damages and new trial in the interest of justice. In reviewing the damage evidence, the trial court referred to the testimony of the doctor regarding Carla's pain and suffering and, more importantly, to the permanent disfigurement to her face. The trial court also observed that the fact that the jury award for damages was below the $1,000 to $1,500 suggested by defendants' counsel in his closing argument indicated that the award was grossly inadequate. The trial court stated that in his opinion the damages exceeded defense counsel's estimate.

"Plaintiff's counsel in his argument to the jury asked for $15,000, and the defendants' counsel asked for $1,000 to $1,500. With respect to Question No. 3, the injuries sustained, in this Court's opinion, far exceeded the $1,000–$1,500, and the award of $750 was grossly inadequate."

The trial court went on to state that he believed the jury's answer to the negligence question was also in error. He also reviewed the testimony of the day care center licensing supervisor regarding staffing regulations and concluded that there was ". . . unquestionably a violation of supervisory control and a violation of the rules for licensing of day care centers for children. . . ." He then quoted the following from *Flippin, supra,* at 54, 55:

"It is well established that the supreme court will affirm a trial court's order for a new trial in the interest of justice unless there is a clear showing of abuse of discretion. A trial court has wide discretion to order a new trial in the interest of justice if the verdict is against the great weight and clear preponderance of the evidence, although the evidence is not so insufficient as to justify changing the answers to the special verdict questions."

The trial court then made the following findings:

"(1)  That the award of $750 was grossly inadequate.

"(2)  I further find that the prejudice permeated the whole of the verdict. I am satisfied that the jury could have found and perhaps should have found, that the answers to Questions 1 and 2 should have been 'yes'.

"(3)  I further find that the verdict is against the greater weight and clear preponderance of the evidence, even though the evidence is not so insufficient as to justify changing the answers to the special verdict questions.

"(4)  I further find that a new trial should be ordered in the interest of justice; to do otherwise, a judgment on the verdict, would result in a miscarriage of justice."

Following these findings, the trial court made a further exhaustive statement which referred to evidence supporting his decision, and also included the following observations:

" . . . .

" . . . . but the evidence disclosed that the minor sustained a 5 centimeter scar, and it is disfigurement on this little girl, which is clearly observable, and that is going to be on her face for the rest of her life; and for the jury to return with an award of $750, after the doctor had described the injury and what pain and suffering there was to the girl, and more importantly, the disfigurement for the rest of her life, in this Court's opinion, is far too low and grossly inadequate.

" . . . but I am sure that you recognized yourself, Mr. Stack, when you argued to the jury, that a fair figure was a thousand dollars to $1,500. But when the jury cut that figure in half and made it $750, this obviously indicated to me that this jury was definitely prejudiced, . . . In good conscience, I couldn't sleep if I didn't set aside this verdict in the interest of justice.

"I want to say that both of the attorneys in this case tried it ably, and I have no criticism of counsel for the plaintiff or counsel for the defendant in any respect; but in good conscience, I couldn't sleep if I were to permit a jury verdict of this kind to stand, under these circumstances. . . ."

The trial court relied on *Lines v. Milwaukee,* 147 Wis. 546, 133 N.W. 592 (1911), in which this court said that a verdict could be set aside where the damages were inadequate and,

". . . Indeed, where the answer to one question in a special verdict indicates that the jury were actuated by passion and prejudice in returning such answer, it is the duty of the court to set the verdict aside, unless satisfied that the passion and prejudice affected only that particular question. 'If it appears that the elements of passion and prejudice may have entered into, and probably did affect, the decision of other questions in the case, the court's duty is to grant a new trial absolutely.' . . . ." *Id.* at 547.

*See also, Van Gheem, supra,* at 240.

In *Hillstead v. Shaw, supra,* this court affirmed the order of the trial court granting a new trial in the interest of justice where the trial court had concluded the damages were inadequate and the jury had found the defendant only 25 percent causally negligent despite evidence of violations of traffic safety statutes. In *Mainz v. Lund,* 18 Wis.2d 633, 645, 119 N.W.2d 334 (1963), this court said:

"The awarding of inadequate damages is not in itself grounds for ordering a new trial where a jury has answered other questions in the verdict so as to find no liability on the part of the party charged with negligence . . . Nevertheless, when the finding of no liability is against the great weight of the evidence, the added element of inadequate damages may have significance in determining whether a new trial should be ordered in the interest of justice."

In *Nelson v. Hansen,* 10 Wis.2d 107, 102 N.W.2d 251 (1960), this court granted a new trial on other grounds but in doing so held that the award of $2,000 for permanent and noticeable facial scars was low enough to justify inclusion of the damage issue in the new trial. In *Neider*

*v. Spoehr,* 39 Wis.2d 552, 562, 159 N.W.2d 587 (1968), and *Makowski v. Ehlenbach,* 11 Wis.2d 38, 43, 44, 103 N.W.2d 907 (1960), this court relied on the trial court's evaluation of the damages because,

". . . The trial judge has an advantage over the appellate court in that he not only sees and hears the testimony, which we can only read from the transcript, but he also has the same opportunity to observe the injured person as does the jury. In this case, for instance, he has seen the scars, and has his own opinion as to how serious their effect can reasonably be expected to be in the future lives of the infant plaintiffs. . . ."

In *Makowski,* a three-year old girl had sustained four scars, each one-quarter to one-third of an inch long, which would improve somewhat and which were not very noticeable. The trial court had found the jury's award of $2,000 excessive and set $1,000 as the least amount an unprejudiced jury would award. On appeal this court applied the then recently formulated *Powers rule* and held that on remand the trial court could fix a reasonable amount, one which might well be in excess of the $1,000 it had felt constrained to award.

The decision of the trial court that the $750 damage award was inadequate is not an abuse of discretion.

The trial court also determined that a new trial in the interest of justice was necessary because the verdict was against the great weight and clear preponderance of the evidence. The finding of the jury that Great Zion Day Care and Nursery was not negligent in the supervision of the use of the lavatory facilities is against the great weight and clear preponderance of the evidence. The evidence conclusively proved that on the day of the accident the day care center was not in compliance with the staff/child ratios established by regulation of the Department

of Health and Social Services. *See:* Chapter PW-CY 40.12(2), Wisconsin Administrative Code. One adult could care for a group of 14 children only if *all* the children were age five or over. These rules are clearly designed to protect the children attending day care centers. Sec. 48.67, Stats., reads in part:

". . . **Rules governing . . . day care centers,** . . . (1) The department shall prescribe rules establishing minimum requirements for the issuance of licenses to and establishing standards for the operation of . . . day care centers . . . These rules shall be designed to protect and promote the health, safety and welfare of the children in the care of all licensees . . . ."

Wisconsin Administrative Code, *"PW–CY 40.10 Introduction.* (1) STATEMENT OF INTENT. The intent of these rules is to protect and promote the health, safety and welfare of children in day care centers in Wisconsin."

Further, it has been recognized that a teacher in a school has a common-law duty to use reasonable care in the supervision of those pupils in his charge. *Cirillo v. Milwaukee,* 34 Wis.2d 705, 711, 150 N.W.2d 460 (1967); *Meihost v. Meihost,* 29 Wis.2d 537, 545, 139 N.W.2d 116 (1966).

The special verdict question in this case did not specifically inquire as to the negligence of Sharon Thacker. The question was directed to the failure of the named defendant, Great Zion Day Care and Nursery, to provide adequate supervision. However, the jury instructions did include the specific instruction concerning the breach of duty of a teacher in failure to use reasonable care in the supervision of pupils. At trial, the teacher acknowledged she had not noticed either Carla or her helpful little friend leave the classroom. The finding of the jury that the defendant-appellant was not negligent in the

failure to provide adequate supervision was against the great weight and clear preponderance of the evidence.

We are of the opinion the trial court properly ordered a new trial in the interest of justice because the verdict was against the great weight and clear preponderance of the evidence.

Mr. Justice BARNES well explained the deference of this court to the judgment of the trial court in matters of this nature in *Lines* and *Schlag:*

". . . A trial judge may observe many things in the conduct of a trial that satisfy him that jurors have been influenced by improper motives and that the verdict returned is founded on passion and prejudice rather than upon law and evidence. In such a case his duty to set aside a verdict is clear, although he might not do so if satisfied that the verdict was the result of honest judgment." *Lines, supra,* at 548.

". . . However, this court is very loath to interfere with the discretion to grant new trials that is vested in circuit judges. It is a power that should be courageously and fearlessly exercised whenever a trial judge is convinced that to enter judgment on a verdict returned would result in a miscarriage of justice. It is very possible that this important power is used more sparingly than it should be." *Schlag, supra,* at 169, 170.

We find no abuse of discretion in the order of the trial court for a new trial on all issues and therefore affirm the order.

*By the Court.*—Order affirmed.