Mark MACHEREY, Plaintiff-Co-Appellant,

v.

HOME INSURANCE COMPANY, Defendant-Respondent,†

Alexander FIGUEROA, Defendant-Appellant,

WISCONSIN HEALTH ORGANIZATION INSURANCE CORPORA-
TION, Defendant.

Court of Appeals

*No. 92–0485. Submitted on briefs February 3, 1993.—Decided
April 5, 1994.*

(Also reported in 516 N.W.2d 434.)

†Petition to review denied.

2

For the plaintiff-co-appellant the cause was submitted on the briefs of *Bode, Gross & Carroll, S.C.* with *John Theiller Bode* and *Jeffrey J. Ek* of Waukesha.

For the defendant-appellant the cause was submitted on the briefs of *Edwin C. Rachow* of Elm Grove.

For the defendant-respondent the cause was submitted on the briefs of *Piette & Jacobson, S.C.* with *Ronald L. Piette* and *Therese M. Lyons* of Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

SCHUDSON, J. Mark Macherey and Alexander Figueroa appeal from a judgment of the trial court granting Home Insurance Company's motion for a directed verdict. We conclude that the trial court erred in granting Home's motion for a directed verdict. We also conclude, however, that the trial court properly granted Home's alternative motion for a new trial, based on the weight of the evidence, pursuant to § 805.15(1), STATS. Further, we conclude that Home waived its challenge to an evidentiary ruling of the trial court concerning the testimony of a police officer. Finally, we affirm the trial court's determination that, based on the facts of the case, the middle burden of proof was the appropriate burden of proof to submit to the jury.[1]

---

[1] As an initial matter, we note that Macherey and Figueroa petitioned this court to strike that part of Home's response brief which addressed the two trial issues—testimony of the police officer and the burden of proof question. Macherey and Figueroa assert that Home was required to file a cross-appeal pursuant to § 809.10(2)(b), STATS. However, Home does not seek a "modification of the judgment" as that term is defined under § 809.10(2)(b). Rather, Home raises an issue, which if sustained by this court on appeal, will uphold the judgment of the trial court. *See State v. Alles*, 106 Wis. 2d 368, 390, 316 N.W.2d 378, 389 (1982)

4

## I. FACTUAL BACKGROUND

On the night of October 25, 1989, Alexander Figueroa was driving a car when he collided with Mark Macherey, who was driving a motorcycle. Figueroa then turned his car around and drove back to the scene of the collision and collided again with Macherey who, by this time, was off his motorcycle. Macherey was injured and sued Figueroa, alleging that he was negligent in the operation of his car. Home Insurance Company, Figueroa's auto insurer, cross-claimed for declaratory relief, alleging that Figueroa's actions were intentional and, therefore, excluded from coverage under the policy.

Following a bifurcated trial on the issue of coverage, a jury unanimously concluded that Figueroa's actions were not intentional. The trial court, however, granted Home's motion for a directed verdict,[2] reasoning that Figueroa:

> . . . never swerved, braked, or sounded his horn. Where an actor's conduct is substantially certain to result in injury, the existence of such intention may be inferred as a matter of law without regard to the actor's claimed intent. Based on Figueroa's testi-

(no need for cross-appeal "when all that is sought is the raising of an error which, if corrected, would sustain the judgment").

[2] The trial court directed verdict in favor of Home and, in the alternative: granted Home's motion to change the jury's answer from "no" to "yes"; granted Home's motion for judgment notwithstanding the verdict; granted Home's motion for a new trial based on insufficiency of evidence, and insufficiency of credible evidence; and granted Home's motion for a new trial because the verdict was contrary to law, contrary to the weight of the credible evidence, and contrary to the interests of justice.

5

mony alone, intent to harm should be inferred as a matter of law.

At the trial, witnesses offered substantially different versions of the event. Macherey and Figueroa did not know each other. Macherey remembered little about the events. His versions, related both through his testimony and that of the police who interviewed him shortly after the collisions, suggested that he lost control of his motorcycle and was hit by Figueroa's car, first while he was on the motorcycle, and next after he had fallen off. Figueroa's versions, both in testimony and through police interviews, suggested that he was frightened by Macherey and hit him first when Macherey blocked his way. Figueroa said that when he then made a U-turn and returned to the scene to "see what happened," he panicked, accelerated, and hit Macherey who seemed to stumble out in front of him. Figueroa said, however, that he didn't see Figueroa before striking him the second time, or that he saw him "a few seconds — a second maybe before the second impact." Figueroa acknowledged his drinking before the accident, his negligence in the operation of his car, and his bad judgment in leaving the scene after the second collision. He denied, however, any intent to strike Macherey.

Three eye-witnesses offered their versions. Linda Gleesing, testified, in part:

> Q: Mrs. Gleesing, you were an eye-witness to the accident and from everything you saw and heard with regard to the accident where the pedestrian was struck by the automobile, do you have any reason to believe that the driver's car intentionally struck Mr. Macherey?

6

A: No.

Q: You have absolutely no reason?

A: No.[3]

Two other witnesses, Richard Stanton, through his deposition, and Steve Clemens, through trial testimony, provided accounts in which they stated their beliefs that, based on their observations of the second collision, Figueroa's conduct was intentional.

## II. DIRECTED VERDICT

A jury verdict will be sustained if there is any credible evidence to support it. Where a trial court has set aside a jury's verdict, the standard for appellate review "is 'whether there is any credible evidence which under any reasonable view fairly admits of an inference supporting the findings. The evidence is to be viewed in the light most favorable to the verdict.' " *Grutzner v. Kruse*, 87 Wis. 2d 38, 40-41, 273 N.W.2d 373, 375 (Ct. App. 1978) (citation omitted). *See also Thompson v. Howe*, 77 Wis. 2d 441, 448, 253 N.W.3d 59, 63 (1977) (The test is whether "there is any credible evidence which under a reasonable view would support a verdict contrary to that which is sought."); *Leatherman v. Garza*, 39 Wis. 2d 378, 387, 159 N.W.2d 18, 22 (1968).

This standard of review applies even when a trial court disagrees with the jury. If there is credible evidence to sustain the verdict, " ' "even though it be

---

[3] In one of her prior statements to a law clerk for Home, approximately two months after the collision and before trial, Gleesing stated that she thought the second collision was intentional.

contradicted and the contradictory evidence be stronger and more convincing, nevertheless the verdict of this jury must stand." ' " *Bergmann v. Insurance Company of North America*, 49 Wis. 2d 85, 88, 181 N.W.2d 348, 350 (1970) (citation omitted). Only in the rare case, where the facts are undisputed and the required verdict is absolutely clear, should the trial court reverse the jury's conclusion. *Millonig v. Bakken*, 112 Wis. 2d 445, 450-51, 334 N.W.2d 80, 83-84 (1983). When, on the other hand, more than one reasonable inference may be drawn from the evidence at trial, this court must accept the inference drawn by the jury. *Heideman v. American Family Ins. Group*, 163 Wis. 2d 847, 863, 473 N.W.2d 14, 21 (Ct. App. 1991). Further, it is not for this court to weigh the credibility of the witnesses or to search the record on appeal for evidence to sustain a verdict that the jury could have reached, but did not. *Fehring v. Republic Ins. Co.*, 118 Wis. 2d 299, 305-06, 347 N.W.2d 595, 598 (1984).

Application of this standard exposes the trial court's error. The trial court stated:

> Where an actor's conduct is substantially certain to result in injury, the existence of such intention may be inferred as a matter of law without regard to the actor's claimed intent. . . . Based on Figueroa's testimony alone, intent to harm should be inferred as a matter of law.

Figueroa, however, denied intent. Although the jury was free to reject his denial and conclude, as the trial court did, that his actions established his intent, the jury was not required to do so. Although such intention "may be inferred" by the jury, such intention remains a factual issue for the jury's assessment based on the evidence.

8

The sole issue for the jury's determination, as submitted in the special verdict, was: "At and immediately prior to the second (east bound) collision on Clifford Avenue on October 25, 1989, did Alexander Figueroa intend bodily injury to Mark Macherey?" The jury was instructed that " 'intentionally', . . . extends not only to those consequences which are desired or intended but also to those which the actor believes are substantially certain to follow from what he does." If Figueroa did not see Macherey until a second before striking him the second time, the fact that he "never swerved, braked or sounded his horn" would have no bearing on whether Figueroa believed that such negligent driving was substantially certain to cause injury to Macherey.

The jury was further instructed, "The intent to injure may be inferred by the nature of the act.. . ." The significant word, of course, is "may" and, contrary to what the trial court concluded, there is nothing in the evidence to suggest that the jury ignored that instruction. Although the trial court believed the jury "should" infer Figueroa's intent, and although on review we see that the evidence established that the jury "could" have inferred such intent, it was within the jury's province to evaluate the credibility of witnesses and weigh the evidence to reach its own conclusion. The testimony of Macherey, Figueroa, the police, and Gleesing support the jury's verdict.

▪

"A court may infer intent to injure as a matter of law only in narrow circumstances." *Loveridge v. Chartier*, 161 Wis. 2d 150, 170, 468 N.W.2d 146, 151 (1991). *See also K.A.G. v. Stanford*, 148 Wis. 2d 158, 163, 434 N.W.2d 790, 792 (Ct. App. 1988). Before drawing that inference, the court must find that the conduct was intentional and was substantially certain to cause

injury. *Id.* Here, although Figueroa's conduct might have been intentional, the evidence was mixed. Viewed in the manner most favorable to the verdict, the evidence certainly did not establish that Figueroa's action "must" have been intentional. In fact, the evidence on which the trial court relied for its decision just as reasonably supports the jury's verdict. The trial court said that because Figueroa "never swerved, braked or sounded his horn," intent should be inferred. These very facts, however, also support Figueroa's version that he never saw Macherey until the last second.[4]

Home, citing *Rogers v. Brown*, 143 Wis. 472, 476, 128 N.W. 64,66 (1910) (citations omitted), argues that this court can only reverse the trial court decision if " 'it clearly appears that it was erroneous' " because the trial court had the benefit of seeing the witnesses and evaluating their credibility. At this juncture in the analysis, however, that standard does not displace the rule that it is error to change the jury's answer if any credible evidence supports it. Here, the trial court did not conclude that Figueroa was incredible in stating that he did not intend to strike Macherey. Rather, the trial court concluded that Figueroa's conduct circumstantially should have led to the inference of intent. As explained above, however, Figueroa's specific conduct on which the trial court based its conclusion leads to the equally plausible jury conclusion that Figueroa did not strike Macherey intentionally. Resting its conclusion not on a credibility assessment, but rather, on a wholly debatable interpretation of conduct, the trial

---

[4] The trial court error is all the more apparent when we consider, also, that on this issue Home bore the burden of proving Figueroa's intent.

10

court erred by discarding the "any credible evidence" standard.[5]

## III. NEW TRIAL

Our consideration, however, must continue. The trial court also granted Home's motion in the alternative for a new trial. Section 805.15(1), STATS., in part states, "A party may move to set aside a verdict and for a new trial because of errors in the trial, or because the verdict is contrary to law or to *the weight of evidence. ...*" (Emphasis added.) Although in this case, as we have explained, the trial court ordered a directed verdict based on an erroneous interpretation of the way in which a jury must draw inferences of intent, the trial court acted within its proper discretion in determining that the weight of evidence was such that a new trial was required.

In *Larry v. Commercial Union Ins. Co.*, 88 Wis. 2d 728, 733, 277 N.W.2d 821, 823 (1979) (citations omitted), the Wisconsin Supreme Court noted:

> This court has repeatedly said that a trial court's decision to grant a new trial will not be disturbed on appeal in the absence of a clear showing of abuse of discretion. On review of such an order this court will look not for evidence to support the jury findings

---

[5] In the alternative, the trial court also granted Home's motions to change the jury's verdict from no to yes, and for judgment notwithstanding the verdict, pursuant to § 805.14(5)(b), STATS. The authorities establish that the standard of review is essentially the same whether evaluating a trial court's directed verdict, change of special verdict answer, or judgment notwithstanding the verdict based on an erroneous interpretation of law. Our conclusion on these two alternative motions is the same as that explained regarding the trial court's order for a directed verdict.

but rather for reasons to sustain the order of the trial court granting a new trial. The order may incorporate an oral decision which has been transcribed and filed.

Here, the trial court concluded that the jury's answer to the intentional act question was in error. In rendering its decision that this error required a new trial, the trial court referred to testimony of several witnesses. The trial court noted that Mr. Stanton, a neighbor who witnessed the second collision, testified that Figueroa drove straight at Macherey, never swerved or applied his brakes and simply "whacked the guy." The trial court also alluded to the testimony of another neighbor, Mr. Clemens, who stated that Figueroa drove straight down the street through the scene of the first collision, never swerving and never slowing down, and hit Macherey head-on. The trial court noted that Ms. Gleesing testified that Figueroa accelerated towards Macherey. Finally, the trial court considered the testimony of Figueroa himself. Figueroa knew he was driving through the scene where he had just struck a motorcyclist. He admitted that he never swerved, braked or sounded his horn. Given these witnesses' accounts, the trial court concluded that the weight of the evidence did not support the jury determination that Figueroa's second striking of Macherey was unintentional.

The trial court carefully considered the facts of the case before rendering its decision.. The trial court expressed its reservations about rejecting the finding of a jury, but declared that the evidence compelled it to do so. Granting Home's request for a new trial under § 805.15(1), STATS., the trial court examined the relevant facts and weighed the evidence, and, using a

rational process, reached a reasonable conclusion. Under the standard of our review delineated in *Larry*, there is no clear showing that the trial court misused its discretion and, therefore, the order granting Home a new trial must be upheld.

## IV. TRIAL COURT RULINGS

### A. Officer Heinrich's Testimony

Home argues that the trial court erred in allowing Officer Heinrich to testify regarding his belief that Figueroa was sincere and credible when Figueroa came to the police station and told his version of the incident. At trial, however, counsel for Home did not object or move to strike. As stated in § 901.03(1)(a), STATS., "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected; and . . . a timely objection or motion to strike appears of record, stating the specific ground of objection . . . ." Home waived the issue.

### B. Jury Instruction

Home also asserts that the trial court erred by submitting an improper jury instruction at the close of the evidence. In *Fischer v. Ganju*, 168 Wis. 2d 834, 849-50, 485 N.W.2d 10, 16 (1992) (citations omitted), the Wisconsin Supreme Court set forth the standard of review in considering whether a trial court's jury instructions misstated the law and misled the jury:

> The trial court has broad discretion when instructing a jury. A challenge to an allegedly erroneous jury instruction warrants reversal and a new trial only if the error was prejudicial. An error is

13

prejudicial if it probably and not merely possibly misled the jury. If the overall meaning communicated by the instructions was a correct statement of the law, no grounds for reversal exist.

As relevant, the trial court instructed the jury in this case:

> The burden of proof as to the question in this verdict is on The Home Insurance Company to convince you to a reasonable certainty by evidence that is clear, satisfactory and convincing that the question should be answered "yes."
>
> If you have to guess what the answer should be after discussing all evidence which relates to a particular question, then the party having the burden of proof as to that question has not met the required burden.
>
> The automobile insurance policy issued by Home Insurance Company to Alexander Figueroa at the time of this incident contains the following exclusion:
>
> "We do not provide Liability Coverage for any person who intentionally causes 'bodily injury'."
>
> You are instructed that the meaning of the word "intentionally", as used in this exclusion, includes more than just a desire to bring about physical results. It extends not only to those consequences which are desired or intended but also to those which the actor believes are substantially certain to follow from what he does. The man who fires a bullet into a dense crowd may fervently pray that he will hit no one, but since he must believe and know that he cannot avoid doing so, he intends it.
>
> The practical application of this principle means that where a reasonable man in Alexander Figueroa's position would believe that a particular result was substantially certain to follow, he will be dealt with as though he had intended it.

14

An intentional act exclusion precludes insurance coverage only where the insured acts intentionally and intends some harm or injury to follow from the act. Intentional bodily injuries are not limited to those injuries that are specifically intended. An intentional acts exclusion precludes insurance coverage where an intentional act is substantially certain to produce injury even if the insured asserts honestly or dishonestly that he did not intend any harm.

You are further instructed that the intent to injure may be inferred by the nature of the act as well as the reasonable foreseeability of the resulting harm even though the actual injury is different in character or magnitude. In other words, intent to injure may be actual or inferred from the nature of the insured's intentional act.

The first paragraph of the instruction substantially adheres to WI JI—CIVIL 205, otherwise known as the "Middle Burden of Proof." It is this paragraph, in light of the trial court's subsequent instructions, that Home argues was improper.

The Comment to WI JI—CIVIL 205 notes that: "The middle burden of proof is required in certain cases of civil actions which involve such matters as fraud, undue influence, punitive damages, and acts which would be considered criminal." The Comment also recognizes that the case of *Wangen v. Ford Motor Co.*, 97 Wis. 2d 260, 294 N.W.2d 437 (1980), lists the particular type of cases in which the middle burden is appropriate. In *Wangen*, the supreme court stated that " '[i]n the class of cases involving fraud, or which undue influence is a specie, gross negligence, and civil actions involving criminal acts' " the middle burden of proof is required. *Id.* at 299, 294 N.W.2d at 457 (citations omitted).

In the present case, the trial court explained its decision to utilize the middle burden of proof:

> Well, the Court does believe that the middle burden is proper in this case, and that it is one that the Supreme Court has — has indicated in the past that some civil cases do command a middle burden. And obviously, if this were a case by the plaintiff against the defendant for one of battery, a civil battery, the burden of proof would be the middle burden.
>
> And I feel that what the insurance company is doing in this case is stating that it's intentional battery is what this — what they are saying is what the defendant did here, rather than negligence or any other theory.
>
> So, consequently, the Court believes that the burden of proof in this case is the middle burden.

The parties recognize that the trial court determination of whether to submit the special verdict in this case under the middle burden of proof or the ordinary burden of proof was a "close call." Indeed, apparently the parties argued the issue for several hours in chambers. Unfortunately, the record does not contain any of these discussions, thus leaving this court with only the brief remarks of counsel and the trial court at the close of testimony.

We conclude that the trial court's instruction on the middle burden provided a correct statement of the law. As the trial court explained, this case involved Home's attempt to prove that Figueroa intended to hit Macherey. That, under *Wangen*, is an act "which would be considered criminal." *Id*. Thus, under *Wangen*, " 'a greater degree of certitude is required before there is a finding against a defendant who will be subjected to the stigma attached to the commission of certain clas-

ses of acts.' " *Wangen*, 97 Wis. 2d at 300, 294 N.W.2d at 458 (citations omitted). Here, Figueroa is potentially subjected to the stigma attached to a person who intentionally runs over an individual with an automobile. Therefore, the trial court did not err in instructing the jury to apply the middle burden of proof.

In sum, the trial court's ruling that a directed verdict in favor of Home was mandated by the evidence is reversed; the trial court's ruling that a new trial was warranted is affirmed; and the trial court's decisions regarding the testimony of the police officer as well as the burden of proof jury instruction are affirmed.[6]

*By the Court.*—Judgment reversed in part; affirmed in part and cause remanded.

FINE, J. (*dissenting*). The majority applies the wrong standard of appellate review of the trial court's decision to grant Home Insurance Company's motion for a directed verdict. The majority states:

> A jury verdict will be sustained if there is any credible evidence to support it. Where a trial court has set aside a jury's verdict, the standard for appellate review "is 'whether there is any credible evidence which under any reasonable view fairly admits of an inference supporting the findings. The evidence is to be viewed in the light most favorable to the verdict.' " *Grutzner v. Kruse*, 87 Wis. 2d 38, 40-41, 273 N.W.2d 373, 375 (Ct. App. 1978) (citation omitted). *See also Thompson v. Howe*, 77 Wis. 2d

---

[6] In his brief to this court, Figueroa asserts that he is entitled to his attorney fees and costs because he was successful at trial in proving that Home was required to defend him as well as provide coverage for the accident. Figueroa's request that we award these damages is premature in light of our conclusion that this case must be remanded for a new trial.

441, 448, 253 N.W.3d 59, 63 (1977) (The test is whether "there is any credible evidence which under a reasonable view would support a verdict contrary to that which is sought."); *Leatherman v. Garza,* 39 Wis. 2d 378, 387, 159 N.W.2d 18, 22 (1968).

This standard of review applies even when a trial court disagrees with the jury. If there is credible evidence to sustain the verdict, " ' "even though it be contradicted and the contradictory evidence be stronger and more convincing, nevertheless the verdict of this jury must stand." ' " *Bergmann v. Insurance Company of North America,* 49 Wis. 2d 85, 88, 181 N.W.2d 348, 350 (1970) (citation omitted). Only in the rare case, where the facts are undisputed and the required verdict is absolutely clear, should the trial court reverse the jury's conclusion. *Millonig v. Bakken,* 112 Wis. 2d 445, 450-51, 334 N.W.2d 80, 83-84 (1983). When, on the other hand, more than one reasonable inference may be drawn from the evidence at trial, this court must accept the inference drawn by the jury. *Heideman v. American Family Ins. Group,* 163 Wis. 2d 847, 863, 473 N.W.2d 14, 21 (Ct. App. 1991). Further, it is not for this court to weigh the credibility of the witnesses or to search the record on appeal for evidence to sustain a verdict that the jury could have reached, but did not. *Fehring v. Republic Ins. Co.,* 118 Wis. 2d 299, 305-06, 347 N.W.2d 595, 598 (1984).

Majority op. at 7–8. This statement is accurate insofar as it goes; here is the rest of the story.

It is the well-established law in this state that we may not reverse a trial court's decision either to take the case away from the jury or to overturn a jury's verdict unless we are convinced that the trial court was "clearly wrong." *Helmbrecht v. St. Paul Ins. Co.,* 122

18

Wis. 2d 94, 110, 362 N.W.2d 118, 127 (1985); *see also Olfe v. Gordon*, 93 Wis. 2d 173, 186, 286 N.W.2d 573, 579 (1980); *Kanass v. Chicago, M. & St. Paul Ry. Co.*, 180 Wis. 49, 55, 192 N.W. 383, 386 (1923) (change of answer in jury verdict). *Helmbrecht* traced this standard and explained its rationale:

> " ' ". . . [W]hen the trial judge rules, either on motion for nonsuit, motion for a directed verdict, or motion to set aside the verdict, that there is or is not sufficient evidence upon a given question to take the case to the jury, the trial court has such superior advantages for judging of the weight of the testimony and its relevancy and effect that this court should not disturb the decision merely because, on a doubtful balancing of probabilities, the mind inclines slightly against the decision, but only when the mind is clearly convinced that the conclusion of the trial judge is wrong." ' *Trogun v. Fruchtman*, 58 Wis. 2d 569, 585, 207 N.W.2d 297 (1973), quoting, *Slam v. Lake Superior T. & T. Ry.*, 152 Wis. 426, 432, 140 N.W. 30 (1913)."

*Helmbrecht*, 122 Wis. 2d at 110, 362 N.W.2d at 127 (quoting *Olfe*, 93 Wis. 2d at 186, 284 N.W.2d at 579). Although the question is close, I cannot say that the trial court here was clearly wrong. Accordingly, I must, respectfully, dissent.