Timothy JONES, Plaintiff-Appellant,

v.

Abdul Bagi TOKHI, d/b/a New York Fried Chicken, and
ABC Insurance Company, Defendants-Respondents.

Court of Appeals

*No. 94–1459. Oral argument March 30, 1995.—Decided April
18, 1995.*

(Also reported in 535 N.W.2d 46.)

516

For the plaintiff-appellant the cause was submitted on the briefs of *Law Offices of Andrew Mishlove*, with *Andrew Mishlove*, and *Law Offices of Joseph R. Reback*, with *Joseph R. Reback* of Milwaukee.

For the defendant-respondent the cause was submitted on the briefs of *Michael F. Flaherty* of Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

SCHUDSON, J.   Timothy Jones appeals from the trial court judgment that dismissed his action against Abdul Bagi Tokhi, d/b/a New York Fried Chicken, and its insurer,[1] after the trial court struck the jury's special verdict answers that apportioned negligence and set $25,000 for loss of future earnings. We reverse.

On March 1, 1992, Jones was shot while in Tokhi's restaurant parking lot. Jones brought a negligence suit against Tokhi, alleging that Tokhi failed to provide proper security, that the restaurant's security guard failed to summon aid after aid had been requested, and that the security guard failed to render requested assistance. The jury found the defendants 80% causally negligent and Jones 20% negligent. The trial court, however, struck the jury's verdict, concluding that Jones's attempt to disarm the gunman constituted negligence that exceeded the defendants' negligence as a matter of law. The trial court also struck the jury's

---

[1] Although designated in the caption as "ABC Insurance Company," Tokhi's insurer was American Family Mutual Insurance Company.

517

verdict, which had set loss of future earnings at $25,000. Jones appeals.[2]

Jones, a high school varsity basketball player, went with three friends to the New York Fried Chicken Restaurant at about 1:45 a.m. on March 1, 1992. When Jones and his friends arrived they observed numerous persons loitering outside the restaurant. As Jones and his friends entered, one of the loitering men made taunting remarks and followed them inside. Once inside, this man said, "I should jack these punks," meaning that he should rob Jones and his friends. The man then left the restaurant but was observed peeking through the restaurant windows while Jones and his friends remained inside.

As a result of many violent incidents at and in the area of the restaurant, the restaurant had employed a uniformed, armed security guard. One of Jones's companions testified that he asked the security guard, "Sir, I think something going to happen outside, could you come outside?" Jones testified that he said to the security guard, "I think something's going down. . . . [Y]ou should really come out here and walk us to the car," or "come out here and check it out." Jones and his friend also testified that the security guard responded that he was only responsible for what took place inside the restaurant. The guard remained inside and did nothing to assist Jones and his friends who then walked out of the restaurant.

Two men confronted Jones and his friends in the parking lot. The one who had followed them inside had a gun and the other told him, "Shoot one of the[m]. Shoot one of them. Show them you ain't a punk." Jones

---

[2] The jury also found damages of $200,000 for pain, suffering and disability. Medical expenses were stipulated to as $59,444.95. These findings are not challenged on appeal.

attempted to disarm the gunman and was shot in the abdomen. He suffered serious injuries and, as a result, he was unable to participate in the state high school basketball tournament, graduate with his high school class, and continue his employment with the recreation department of the Milwaukee Public Schools. The injuries also resulted in a one-year delay of his college enrollment and the loss of his athletic scholarship.

The jury concluded that the restaurant was 80% negligent, and that Jones was 20% negligent. The trial court, however, changed the verdict for the defendants stating that Jones's negligence exceeded that of the defendants as a matter of law. Because the trial court set aside the jury's verdict "as a matter of law" rather than upon its review of the credible evidence, we decline the parties' invitation to examine the standard of appellate review for the latter inquiry. *See Macherey v. Home Ins. Co.*, 184 Wis. 2d 1, 7-8, 516 N.W.2d 434, 436 (Ct. App. 1994); *id.* at 17-19, 516 N.W.2d at 440-441 (Fine, J., dissenting). Instead, we independently review the trial court's legal conclusion that Jones's actions taken in self-defense were more negligent "as a matter of law." *See Nottleson v. Department of Industry, Labor and Human Relations*, 94 Wis. 2d 106, 116, 287 N.W.2d 763, 768 (1980) (legal conclusions of trial court reviewed on appeal *de novo*).

The parties agree that the trial court correctly instructed the jury on the well-established legal standard defining a tavern or restaurant proprietor's duty to a patron, based on *Weihert v. Piccione*, 273 Wis. 448, 455-456, 78 N.W.2d 757, 761 (1956), and WIS J I—CIVIL 8045. Tailoring that standard to this case, the trial court instructed:

519

As the proprietor of a restaurant who opens it to the public for business purposes, Abdul Bagi Tokhi had a duty to use ordinary care to protect members of the public while on the premises from harm caused to him by the accidental, negligent, or intentional acts of third persons if, by using ordinary care, he could have discovered that the acts were being done or were about to be done, and he could have protected Timothy Jones by controlling the conduct of the third person or by giving a warning adequate to enable Timothy Jones to avoid harm. However, Abdul Bagi Tokhi is not required to guarantee the safety of patrons against injuries inflicted by other patrons on the premises.

Jones argues that in concluding that his negligence exceeded that of the defendants "as a matter of law," the trial court erred by focusing on one piece of evidence—his attempt to disarm the assailant—to the exclusion of the evidence of the security guard's failure to assist. We agree.

"The apportionment of negligence is generally a question for the jury and the trial court is to sustain that apportionment if there is any credible evidence to support it." *Stewart v. Wulf*, 85 Wis. 2d 461, 471, 271 N.W.2d 79, 84 (1978). "A jury's apportionment may, however, be set aside if it is grossly disproportionate, if the plaintiff's negligence is greater than the defendant's or if there is such a complete failure of proof the apportionment must be based on speculation." *Id.* Nevertheless, "[w]here the causal negligence of the plaintiff is greater than that of the defendant the trial court has a duty to so hold as a matter of law." *Id.*

Here, credible evidence supported the jury's verdict. There was no dispute that Jones was shot on the restaurant "premises," and there was no dispute that

the security guard's responsibility extended to the parking lot for protection of patrons leaving the restaurant. Although the security guard testified that he had no memory of anyone alerting him to the danger or requesting assistance, Jones and his friend testified that they did so and that the security guard eschewed responsibility for the restaurant premises beyond the restaurant building. The jury was entitled to believe the accounts of their warnings to the guard and their requests for his assistance. Those warnings and requests reasonably could have led the jury to conclude that the security guard, in the words of the jury instruction, "could have discovered that the acts . . . were about to be done, and he could have protected Timothy Jones by controlling the conduct" by calling the police, escorting Jones in the parking lot, or assisting him and his friends in some other manner. As the supreme court explained, "Although the standard of care does not change, the degree of care required fluctuates with the facts and circumstances surrounding each particular case." *Weihert*, 273 Wis. at 456, 78 N.W.2d at 761.

In support of the trial court's conclusion that Jones's actions were more negligent than those of the defendants as a matter of law, Tokhi argues that Jones "without a doubt, knew [t]hat the likelihood of being shot, would increase if he attempted to disarm his attacker." The record, however, offers absolutely no basis for this assertion.

The evidence established that Jones attempted to disarm the gunman only after hearing the other assailant repeatedly urge the gunman to shoot. When victims are facing the barrel of a gun and listening to threats to shoot them, it is difficult to know what they

should do. Actions that seem prudent and prove successful under one set of circumstances may prove disastrous under others. Tokhi offers no authority to support the notion that such an attempt to disarm an assailant is negligent as a matter of law.[3] We see nothing disproportionate in the jury's apportionment of negligence given the facts of this case.

Tokhi also argues that considerations of public policy should preclude recovery in this case. *See Rolph v. EBI Cos.*, 159 Wis. 2d 518, 534, 464 N.W.2d 667, 673 (1991) (refusing to allow strict products liability to be imposed against a machine reconditioner). Tokhi bases his argument on the fact that the shooting occurred outside the restaurant and on his assertion that there was "no evidence offered that the security guard could have prevented the attack by third person or was even aware of the attack by third person." We reject his argument. Whether the attack occurred in the restau-

---

[3] The trial court denied Jones's request for a jury instruction on the emergency doctrine. *See Papacosta v. Papacosta*, 2 Wis. 2d 175, 178, 85 N.W.2d 790, 792 (1957) (under the emergency doctrine, "a person faced with an emergency which his conduct did not create or help to create is not guilty of negligence in the methods which he chose or failed to choose to avoid the threatened disaster"). At oral argument before this court, however, counsel for Jones advised that the trial court did permit him to argue an emergency doctrine theory in closing argument to the jury. The closing arguments were not recorded. Although the emergency doctrine has been recognized outside automobile accident cases, *see McCrossen v. Nekoosa-Edwards Paper Co.*, 59 Wis. 2d 245, 258-259, 208 N.W.2d 148, 156 (1973), we need not confront the issue of the applicability of the emergency doctrine versus the self-defense privilege here because Jones is not seeking a new trial; he seeks reinstatement of the verdicts.

rant or in the parking lot, it was on the premises and within the guard's area of protection. Whether the guard was aware of the attack when the shooting occurred is irrelevant to whether, in the words of the instruction, "by using ordinary care, he could have discovered that the acts . . . were about to be done." Thus, Tokhi's public policy argument is inconsistent with both the facts of this case and the applicable legal standard.[4]

■

The trial court also struck the jury's answer setting $25,000 damages for loss of earnings, concluding that the verdict was "absolute pure speculation." The evidence, however, provided ample support for the jury's conclusion. Dr. Peter L. Danner, professor emeritus of economics at Marquette University, projected

---

[4] The dissenting argument also is inconsistent with the applicable legal standard. Most glaringly, the dissent declares that "imposing liability here also requires a restaurant to offer greater protection to patrons in its parking lot than our police force is able to offer." As we noted, however, the correct standard jury instruction on which the parties and court agreed clearly explained, "However, Abdul Bagi Tokhi is not required to guarantee the safety of patrons against injuries inflicted by other patrons on the premises."

In this case, to find the restaurant 80% negligent, the jury did not have to conclude that the security guard would have been able to absolutely guarantee Jones's safety. The jury did not have to conclude that the security guard would have been able "to offer greater protection" to Jones "than our police force is able to offer." The jury was required to follow the instruction and, under the specific facts of the case, determine whether the security guard failed to use "ordinary care" and, if so, whether such failure was causally negligent. Thus, the dissent's claims have little if any relationship to this case and the well-settled legal standard.

present value loss of over $30,000 for Jones's one-year delay in entering college and employment.

■

"The amount of damages awarded is a matter resting largely in the jury's discretion." *Zintek v. Perchik*, 163 Wis. 2d 439, 480, 471 N.W.2d 522, 538 (Ct. App. 1991). Loss of future earnings necessarily is a somewhat speculative determination and, as we have recently explained, although the precise basis for the jury's verdict may not be entirely clear, a jury's conclusion may rest on expert testimony and myriad other evidentiary factors. *Weber v. Chicago & N.W. Transp. Co.*, 191 Wis. 2d 627, 636–637, 530 N.W.2d 25, 29–30 (Ct. App. 1995). Here, Dr. Danner's testimony, in combination with the other evidence from the trial, formed a sufficient evidentiary foundation for the jury's verdict.

Accordingly, we reverse and remand this case for the reinstatement of the jury's verdicts and for the entry of judgment for Jones.

*By the Court.*—Judgment reversed and cause remanded with directions.

WEDEMEYER, P.J. (*dissenting*). I write separately because I cannot agree with the result in the majority opinion. Instead, I conclude that the judgment of the trial court should be affirmed on public policy grounds. Specifically, I conclude that the injury Jones suffered was too wholly out of proportion to the culpability of the negligent tort-feasor, and would place too great a burden on restaurateurs who serve crime-ridden neighborhoods. *Coffey v. Milwaukee*, 74 Wis. 2d 526, 541, 247 N.W.2d 132, 139 (1976).

The jury determined that the restaurant was negligent in failing to protect its patrons while on the premises. Case law in Wisconsin dictates that a proprietor of a restaurant has a duty to use ordinary care to protect members of the public, while on the premises, from harm caused to them by the accidental, negligent or intentional acts of third persons. WIS J I—CIVIL 8045; *see also Weihert v. Piccione*, 273 Wis. 448, 78 N.W.2d 757 (1956). Under the facts and circumstances in the instant case, however, imposing liability on the restaurant for the negligent acts committed contravenes public policy. The restaurant's liability is premised on the security guard's conduct, which involves two acts of omission: (1) failing to call the police; and (2) refusing to go outside the restaurant to determine if "something was going down."

The injury Jones suffered, however, is wholly out of proportion to either omission. Does it contravene public policy to impose liability on a restaurant because its security guard failed to telephone police under these circumstances? (The record does not indicate that Jones or his companions made a specific request to telephone the police.) I believe it does. There is no guarantee that police would even have responded to the call or arrived prior to Jones's attempt to wrest the gun from the gunman. Does it contravene public policy to impose liability on a restaurant because the security guard failed to go outside with Jones to see if something was going down? I believe it does. The record indicates that the attackers were not out in the open. They hid and remained hidden until they could surprise Jones and his companions.

Further, imposing liability because the security guard failed to telephone police and/or failed to go outside as requested, places an unreasonable burden

on restaurants. Imposing liability under the facts in this case may lead to restaurants and other businesses refusing to locate in high crime areas. Imposing liability here also requires a restaurant to offer greater protection to patrons in its parking lot than our police force is able to offer.

Accordingly, liability should not be imposed on the restaurant on the grounds of public policy. I would affirm the judgment. As a result, I respectfully dissent.