Michael R. PLATZ and Yvette Platz, Plaintiffs-
Appellants,

PRIMECARE HEALTH PLAN, INC., Plaintiff,

v.

UNITED STATES FIDELITY & GUARANTY COMPANY,
Defendant-Respondent,

WINDSOR INSURANCE COMPANY, Kevin Engel, Cincinnati
Insurance Company and Keith E. Gritt, Defendants.

Court of Appeals

*No. 94–1629. Submitted on briefs April 4, 1995.—Decided
July 11, 1995.*

(Also reported in 537 N.W.2d 397.)

<br><br><br>

For the plaintiffs-appellants the cause was submitted on the briefs of *Jeffrey A. Pitman* and *Laura M. Huegerich*, of Milwaukee.

For the defendants-respondents the cause was submitted on the briefs of *Peterson, Johnson & Murray, S.C.*, with *Michael P. Crooks*, of Madison.

Before Sullivan, Fine and Schudson, JJ.

SCHUDSON, J.   Michael and Yvette Platz appeal from the trial court order changing the jury's answers regarding whether an unidentified hit-and-run driver caused a collision with their car, and dismissing their action for damages resulting from the accident. We agree with their contention that credible evidence supported the jury's verdicts and, therefore, we reverse.

Michael Platz was one of many drivers involved in a multi-car collision that occurred during sudden, slippery, white-out conditions on February 11, 1990, on Interstate 894. Yvette Platz, his wife, was a passenger. The Platzes sued the drivers of two other cars and United States Fidelity & Guaranty Company, the insurer through which the Platzes had a policy providing uninsured motorist coverage, for an accident with "a hit and run vehicle whose operator or owner cannot be identified." This appeal involves only the Platzes' action against USF&G.

The Platzes' car was struck by what Mr. Platz thought was a blue truck driven by Keith Gritt. In the chaos that followed, however, there was much confusion and, at trial, the evidence did not support Mr. Platz's identification of Mr. Gritt's blue truck as the

777

vehicle that struck his car, and no evidence conclusively established the identity of either the driver or the vehicle that struck the Platzes' car. Although many motorists were involved in the collisions, many others, apparently more careful, lucky, or both, were able to avoid colliding with others. The Platzes' action ultimately depended on circumstantial evidence to support their theory that some unidentified driver struck their car and left the scene.

At the close of plaintiffs' case, USF&G moved for dismissal, arguing that there was no evidence of negligence by any unidentified driver, and no evidence that the driver whose car struck the Platzes' car had "run." The trial court denied the motion, summarizing the mixed evidence regarding the identity of the vehicle and noting "then the only alternative is an unidentified vehicle." Further, the trial court noted, "With the conditions that existed at the time and place in question, there would be a jury question [whether the striking vehicle was] driving too fast for conditions . . . . It's a jury question as to whether this unidentified vehicle either was negligent, whether that negligence caused the striking . . . and whether it 'ran' from the scene."

The trial thus proceeded and, at its conclusion, the trial court submitted special verdict questions including:

> THIRD QUESTION: At and just before the accident . . . was an unidentified hit and run driver negligent in the manner in which he or she operated his or her motor vehicle?
>
> FOURTH QUESTION: If you answer Question No. 3 "Yes", then answer this question:
>
> Was such negligence a cause of an accident with . . . Platz?

The jury answered both questions "yes" and awarded $15,943 damages to the Platzes.

Deciding the motions after verdict, however, the trial court changed the answers on these two questions from "yes" to "no," explaining:

> There's no question that there was a hit here. The real question is whether there was a run and whether or not there's any evidence of negligence on an unidentified driver.
>
> And I have to come to the conclusion now that there was not on either of those. It was a bizarre case to say the least with—I don't know anywhere from 12 or 15 or 19 cars. I heard I think some testimony as high as 50 cars that were not necessarily all bumped but were at least involved on the freeway on the day in question.
>
> There's also no question that not only [Mr. Platz] but also some other people were able to control their cars in this whiteout situation to where they provided no collision to anybody else.
>
> There was also testimony about I think one or two cars that hit Mr. Platz that are also unidentified which, of course, is not part of the deciding issues here today nor were they at the trial.
>
> The only thing that was important from those car's [sic] standpoint is that they tipped Mr. Platz's car off to the left to a situation where instead of getting hit in the rear he got hit on the side.
>
> . . . .
>
> It's unfortunate that we have a situation where there's no question that Mr. Platz was hit by somebody, but the problem I have contrary to what I might have said at trial there is really no evidence of any negligence on anybody.
>
> We do not know whether or not that car that hit Mr. Platz was pushed by somebody other than by that unidentified driver's negligence. You could

infer that there was negligence because I indicated as to why I decided the motion at the time of the trial, but that's pure speculation.

You could just as well infer that somebody else hit the unidentified driver pushing that unidentified driver into Mr. Platz.

You have only unfortunately one deputy sheriff who was overwhelmed in his attempt to get information; that is, Deputy Spain at the scene.

We don't know what happened to this unidentified driver whether they [sic] remained at the scene and then left.

We do know that Mr. Platz shortly after he got hit took his car off the freeway maybe for safety purposes so he wouldn't get hit again—off on the Greenfield ramp.

The problem we have with him attempting to act with diligence in getting his car off the freeway and onto the ramp is that it didn't provide any opportunity for any unidentified driver to give his name or her name to Mr. Platz to let them know that they hit him. We don't know what happened to that car, whether they remained at the scene or didn't remain at the scene.

There's no evidence one way or the other on it. So what you have here is a failure on the part of Platz to show the run portion of the hit and run.

. . . .

The problem I have is that there's no evidence of somebody running. It's all by inference, and there's no concrete evidence to show a run one way or the other.

■

As we recently explained, "[i]f there is credible evidence to sustain the verdict," the verdict must stand. *Macherey v. Home Ins. Co.*, 184 Wis. 2d 1, 7-8, 516 N.W.2d 434, 436 (Ct. App. 1994). "Only in the rare case,

where the facts are undisputed and the required verdict is absolutely clear, should the trial court reverse the jury's conclusion." *Id.* at 8, 516 N.W.2d at 436. Further, of particular significance for our review of this case, we explained that "[w]hen . . . more than one reasonable inference may be drawn from the evidence at trial, *this court must accept the inference drawn by the jury.*" *Id.* (emphasis added).[1]

---

[1] Dissenting in *Macherey v. Home Ins. Co.,* 184 Wis. 2d 1, 516 N.W.2d 434 (Ct. App. 1994), Judge Fine relied on *Helmbrecht v. St. Paul Ins. Co.,* 122 Wis. 2d 94, 362 N.W.2d 118 (1985), in support of the "clearly wrong" standard. *Helmbrecht,* however, sends mixed messages. First, citing § 805.14, STATS., *Helmbrecht* reiterated the "no credible evidence" standard and further emphasized that the "no credible evidence" standard " 'applies to both the trial court on a motion after verdict and to this court on appeal.' " *Id.* at 109-110, 362 N.W.2d at 127 (citations omitted). Next, quoting *Olfe v. Gordon,* 93 Wis. 2d 173, 286 N.W.2d 573 (1980), *Helmbrecht* invoked the "clearly wrong" standard but also quoted authorities talking in terms of whether "there is or is not sufficient evidence upon a given question *to take the case to the jury.*" *Helmbrecht,* 122 Wis. 2d at 110, 362 N.W.2d at 127 (emphasis added; citations omitted). Moreover, *Helmbrecht* went on to apply the "no credible evidence" standard in resolving several issues on appeal but, in one instance, added that the trial court decision *also* was "clearly wrong." *See id.* at 118, 362 N.W.2d at 131. Thus, *Helmbrecht* contributed to the confusion on this issue.

In resolving this issue in favor of the "no credible evidence" standard, *Macherey* preserved the distinction between a trial court's determination of whether there is "credible evidence" to *submit* to a jury (where, as *Helmbrecht* perhaps implied, we defer to the trial court's "superior advantages for judging of the weight of the testimony and its relevancy and effect," *Helmbrecht,* 122 Wis. 2d at 110, 362 N.W.2d at 127 (citations and inner quotations omitted)), and a trial court's decision on whether to *overrule* a jury's decision (where we, like the trial

The trial court's explanation for its decision to change the answers reveals its error. The trial court explicitly acknowledged that evidence supported an inference that another driver was negligent in striking the Platzes' car, and also that evidence supported an inference that the unidentified driver then "ran" from the scene. The trial court concluded, however, given the considerable factual uncertainties, the evidence also supported the opposite inferences so that the verdicts could not stand.

The trial court erred as a matter of law. The fact that the evidence just as strongly supported inferences opposite those reached by the jury does not permit the trial court to change the jury's answers. Indeed, as long as credible evidence supports a verdict, "even though it be contradicted and the contradictory evidence be stronger and more convincing, nevertheless the verdict of th[e] jury must stand." *Id.* at 7-8, 516 N.W.2d at 436 (citations omitted).

The trial record in this case provides essentially undisputed, credible evidence from which the jury could reasonably infer that an unidentified motorist was driving too fast for the conditions; that the driver struck the Platzes' car; and that although the driver could have remained at the scene to identify himself or herself despite the fact that Mr. Platz had pulled off the freeway and on to a ramp for safety, that the unidentified driver did not do so. Although we agree that other inferences also could have been drawn from the evidence, credible evidence supported the jury's inferences and answers and, therefore, the verdicts must be reinstated.

court, must defer to the jury's evaluation of credibility of witnesses and weight of evidence).

*By the Court.*—Order reversed.

FINE, J. (*dissenting*). For the reasons I explained in my dissent in *Macherey v. Home Ins. Co.*, 184 Wis. 2d 1, 17–19, 516 N.W.2d 434, 440–441 (Ct. App. 1994), the majority has applied the wrong standard of review.[1] I cannot conclude that the trial court was "clearly wrong" when it changed the jury's answers. Indeed, as the trial court indicated, those answers rested on speculation, not evidence. Accordingly, they cannot stand. *See Merco Distrib. Corp. v. Commercial Police Alarm Co.*, 84 Wis. 2d 455, 460, 267 N.W.2d 652, 655 (1978) (verdict may not rest on speculation). I would affirm.

---

[1] Although a published decision of the court of appeals is binding on us, § 752.41(2), STATS., it cannot trump applicable supreme court precedent. In my view, the majority decision in *Macherey* does precisely that. Accordingly, I am bound not by *Macherey* but by the long, unbroken line of supreme-court precedent I cited in my *Macherey* dissent.