Jon KRUEGER, a minor, by Robert G. Lee, his Guardian ad Litem, Earl H. Krueger, Jr., and Elizabeth A. Krueger, Plaintiffs-Appellants,

v.

TAPPAN COMPANY, Defendant-Respondent.

Court of Appeals

No. 80–2084. Submitted on briefs August 6, 1981.—Decided September 15, 1981. (Also reported in 311 N.W.2d 219.)

For the plaintiffs-appellants the cause was submitted on the briefs of *Richard J. Phelan* and *Phelan, Pope & John, Ltd.* of Chicago, IL, and *H. Robert Kilkelly* and *Lee, Johnson, Kilkelly & Nichol, S.C.,* of Madison.

For the defendant-respondent the cause was submitted on the brief of *Richard A. Hollern, Richard K. Nordeng* and *Thomas M. Pyper* and *Stafford, Rosenbaum, Rieser & Hansen* of Madison.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

GARTZKE, P.J.  This products liability case arises out of a fire in August 1976 in which the plaintiff-appellant, then seven years old, was severely burned.[1]

---

[1] We refer to appellant in the singular even though his parents are also plaintiffs-appellants.

Gasoline used to clean a kitchen floor was ignited, according to plaintiff, by a 1970 model Tappan gas range, which is claimed to have been defective. The trial court dismissed the complaint following a verdict finding that the range was not defective.

The theory of plaintiff's case is strict liability in tort. The issues are whether the evidence supports the verdict that the range was not defective and unreasonably dangerous; whether the court properly excluded from evidence the 1979 Tappan gas range owner's manual which warns of the danger of using flammables near lighted pilot lights; and whether the use of a 1979 publication of the United States Consumer Product Safety Commission was properly limited. We affirm the judgment dismissing the complaint.

1. *Sufficiency Of Evidence*

Appellate review of jury findings is limited to whether the record contains "any credible evidence that under any reasonable view supports the verdict and removes the issue from the realm of conjecture." *Coryell v. Conn*, 88 Wis. 2d 310, 315, 276 N.W.2d 723, 726 (1979). To succeed on appeal, the appellant must show that there is such a complete failure of proof that the verdict could only be based upon speculation. *Ernst v. Greenwald*, 35 Wis. 2d 763, 773, 151 N.W.2d 706, 711 (1967). We must view the evidence in the light most favorable to the respondent and affirm if there is any credible evidence on which the jury could have based its decision, particularly where, as here, the verdict has the approval of the trial court. *Roach v. Keane*, 73 Wis. 2d 524, 536, 243 N.W.2d 508, 515 (1976).

Mrs. Danz used gasoline to facilitate removal of carpet backing from her kitchen floor. She set a closed gas can next to the refrigerator after taking all precautions she thought were necessary. The windows were open, no lights were on and no stove burner was lighted. She did

not know that gasoline fumes sink and would not disperse through the windows, and she forgot that gas stoves have continuous pilot lights. Mrs. Danz testified that before the incident she knew the stove had three pilot lights and that she had lighted them in the past. She testified that when she used gasoline in the area of the stove she "just didn't think" about the fact that the stove had operating pilot lights. The fumes ignited and a fire resulted, burning plaintiff who was in the kitchen.

According to plaintiff's expert, the gasoline fumes were ignited by the hidden flame of one of the three pilot lights on the 1970 model Tappan gas stove. The owner's manual for the stove did not mention the existence of the three pilot lights and the dangers they presented in the presence of flammable fumes. The stove bore no such warning. In the expert's opinion, a warning on the stove was necessary to remind the consumer of the existence and location of the pilot lights and to warn of dangers in using flammables near a lighted pilot light.

On motions after verdict, the trial court found that there was ample evidence, when viewed in the light most favorable to respondent Tappan, to support the finding that the stove was not defective and in a dangerous condition. We agree.

Tappan's officer in charge of research and development was a member of the American National Standards Institute, which promotes products standards. A division of the institute consists of representatives from gas utilities and manufacturers, consumer products groups, and consumers' unions, as well as home economists and government representatives. One subcommittee of that division is concerned with domestic gas ranges. Tappan's officer was a member of that subcommittee from approximately 1966 to 1976. The subcommittee creates safety and performance standards as to gas ranges, and utilizes information from stove manufacturers and utili-

ties which install and sell gas ranges. During the period 1966 through 1970 the Tappan officer received no information from the committee of any occurrence in which a person was injured by virtue of having used a flammable liquid in a kitchen near a gas range, and at no time during that same period did he receive any such information through the Tappan organization.

Plaintiff contends that the testimony of his expert was not contradicted by any expert or even by a lay person. The jury is not bound by the opinion of an expert, however, even if the opinion is uncontradicted. *Capitol Sand & Gravel Co. v. Waffenschmidt,* 71 Wis. 2d 227, 234, 237 N.W.2d 745, 749 (1976), citing *Pautz v. State,* 64 Wis. 2d 469, 476, 219 N.W.2d 327, 331 (1974). As stated in *Pautz,* an expert's "testimony must pass through the screen of the fact trier's judgment of credibility," quoting from *United States v. Pittman,* 449 F.2d 623, 628 (7th Cir. 1971). The jury could well accept or reject the expert's opinion, in view of the testimony of Mrs. Danz and the defendant's director of research and development. The jury could conclude that Mrs. Danz needed no warning and that Tappan need not have foreseen that the pilot lights would be dangerous, and therefore had no duty to warn. *See Restatement (Second) of Torts* sec. 402A, comment *j* at 353 (1965), discussed later in this opinion.

Plaintiff asserts that reversal is necessary because no evidence was presented to show that the Tappan range was *not* defective. The burden, of course, was upon the plaintiff to establish that the gas range was defective.

2. *Evidence Of Subsequent Warnings*

Plaintiff offered in evidence a 1979 Tappan gas range owner's manual. The manual contains the following statement: "Do not store or use gasoline or other flam-

mable vapors and liquids in the vicinity of this [gas range] or any other appliance." The court rejected the exhibit on grounds that it did not pertain to feasibility of a design change and the 1979 manual was too remote from the 1970 model claimed to be defective.

Plaintiff contends that the 1979 manual was admissible because it is evidence of a step taken to promote safety and proved not only the feasibility of a warning but also Tappan's knowledge of a possible danger and the lack of obviousness of the hazard.

The admissibility of post-accident remedial measures is governed by Rule 904.07, Stats., which provides in relevant part:

When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This section does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted. . . .

Tappan has not denied that it was feasible for it to have given a warning in its 1970 manual or on the stove. The feasibility of a warning not being controverted, the 1979 manual is inadmissible under the plain wording of Rule 904.07, Stats.

The reason for prohibiting the admission of post-accident remedial measures to show, for example, feasibility when feasibility is uncontroverted, is stated as follows in *McCormick on Evidence* sec. 275 at 668–69 (2d ed. 1972):

[T]he extrinsic policy of encouraging remedial safety measures is the predominant reason for holding evidence of these measures to be privileged. It is apparent that

the free admission of such evidence for purposes other than as admissions of negligence is likely to defeat this paramount policy. It is submitted that before admitting the evidence for any of these other purposes, the court should be satisfied that the issue on which it is offered is of substantial importance and is actually, and not merely formally in dispute, that the plaintiff cannot establish the fact to be inferred conveniently by other proof, and consequently that the need for the evidence outweighs the danger of its misuse. (Footnotes omitted.)

Plaintiff nevertheless contends that *Chart v. General Motors Corp.*, 80 Wis. 2d 91, 258 N.W.2d 680 (1977), establishes that evidence of a remedial change is admissible in products liability actions. *Chart* does not stand for so broad a proposition. *Chart* involved an action for injuries arising out of the defective design of an automobile. The trial court admitted evidence relating to changes in the design of later models of the automobile. The *Chart* court adopted the holding in *Ault v. International Harvester Co.*, 13 Cal. 3d 113, 117 Cal. Rptr. 812, 528 P.2d 1148, 1151 (1974), that "if the [design] changes occur closely in time they may well illustrate the feasibility of the improvement at the time of the accident, one of the normal elements in the negligence calculus." *Chart*, like *Ault*, was a product design case and not a product warning case. That fact was critical to the decision in *Chart*, where the question was whether changes illustrating the feasibility of precautionary measures are admissible in a products liability case under Rule 904.07, Stats.

The *Chart* court concluded that the purpose of Rule 904.07, Stats., is to exclude evidence of remedial changes "so as not to deter a potential or present defendant from taking steps that will promote safety but at the same time tend to be inculpatory." The court noted that in the products liability area the emphasis has been shifted from the manufacturer's conduct to the character of the

product.[2] 80 Wis. 2d at 101, 258 N.W.2d at 683–84. Accordingly, the court held that evidence of a design change was admissible under Rule 904.07.

The shift in emphasis from the manufacturer's conduct to the character of the product is true for strict liability based on product design but not for strict liability based on failure to warn. The duty to warn involves foreseeability, and failure to warn involves culpability. The manufacturer's conduct is an issue in a warning case.

Wisconsin has adopted the rule of strict liability in tort as set forth in *Restatement (Second) of Torts* sec. 402A at 347–48 (1965). *Dippel v. Sciano,* 37 Wis. 2d 443, 459, 155 N.W.2d 55, 63 (1967). Strict liability in tort, as established by sec. 402A, has nothing to do with culpability. Strict liability for the sale of a defective product may arise even though the seller "has exercised all possible care." *Restatement (Second) of Torts* sec. 402A (2)(a) at 348 (1965). The rule adopted from sec. 402A "imposes strict liability for tort, not for negligence." *Greiten v. La Dow,* 70 Wis. 2d 589, 600, 235 N.W.2d 677, 684 (1975).

Strict liability under sec. 402A of the *Restatement* arises only where the defective condition of the product makes it unreasonably dangerous, and a product sold without an adequate warning of danger is in a defective condition. Comment *h* at 351–52; comment *j* at 353.

---

[2] The emphasis in *Chart v. General Motors Corp.,* 80 Wis.2d 91, 258 N.W.2d 680 (1977), on the character of the product in a design case rather than a manufacturer's conduct does not prevent examination of that conduct once the tort has occurred. If tortious conduct supporting a claim for compensatory damages is established in a products liability case based upon strict liability, the injured person may be awarded punitive damages if the jury is satisfied to a reasonable certainty by evidence that is clear, satisfactory and convincing that the defendant's conduct was outrageous. *Wangen v. Ford Motor Co.,* 97 Wis. 2d 260, 266–71, 299–300, 294 N.W.2d 437, 441–44, 457–58 (1980).

Notwithstanding that apparent merging of defective design and inadequate warning in the "condition" of the product, the duty to warn arises if the seller has, or should have, knowledge of a dangerous use. Comment *h* at 351–52; comment *j* at 353.

Whether the seller had or should have had knowledge of a dangerous use prior to the plaintiff's injury necessarily shifts the focus back to the seller's conduct in a strict liability case based on a claimed failure to warn.[3] Courts in some jurisdictions have noted this distinction and found it to be grounds for holding evidence of a subsequent warning inadmissible. *Werner v. Upjohn Co., Inc.,* 628 F.2d 848, 856–58 (4th Cir. 1980), *cert denied,* 449 U.S. 1080, 101 S. Ct. 862 (1981); *Smith v. E. R. Squibb & Sons, Inc.,* 405 Mich. 79, 273 N.W.2d 476, 480–81 (1979) (dictum as to strict liability in implied warranty case); *Ortho Pharmaceutical Corp. v. Chapman,* 388 N.E.2d 541, 560 (Ind. App. 1979).

Other courts, whose approach we reject, have not noted or have ignored the distinction which we find renders a subsequent warning inadmissible, and have held to the contrary. *Robbins v. Farmers Union Grain Terminal Ass'n,* 552 F.2d 788, 793 (8th Cir. 1977); *Burke v. Almaden Vineyards, Inc.,* 86 Cal. App. 3d 768, 150 Cal. Rptr. 419 (1978); *Burke v. Illinois Power Co.,* 57 Ill.

---

[3] A conduct-oriented approach, with questions of duty and foreseeability, is evinced by Wisconsin strict liability cases involving a failure to warn. In *Schuh v. Fox River Tractor Co.,* 63 Wis.2d 728, 739, 218 N.W.2d 279, 285 (1974), where the plaintiff alleged failure to warn of the danger associated with a farm implement, the supreme court said that with respect to the duty to warn, the considerations are the likelihood of an accident taking place and the seriousness of the consequences. A federal court applying Wisconsin law concluded that "in any case where the average consumer might not reasonably anticipate and fully appreciate the dangerous condition of a product or the attendant risk of injury, the manufacturer has a duty to warn." *DeSantis v. Parker Feeders, Inc.,* 547 F.2d 357, 363 (7th Cir. 1976).

App. 3d 498, 373 N.E.2d 1354, 1369, 15 Ill. Dec. 670 (1978) ; *Good v. A. B. Chance Co.,* 39 Colo. App. 70, 565 P.2d 217, 224 (1977).

The facts of this case present the converse of the rationale applied in *Chart, supra,* because the duty to warn emphasizes the conduct of the manufacturer rather than the character of the product. Accordingly, Rule 904.07, Stats., prevents the use of subsequent remedial measures to prove that the conduct of the manufacturer in failing to give an adequate warning was culpable in the first instance. The trial court correctly held that the subsequent warning in the 1979 owner's manual was inadmissible.

3. *The Consumer Product Safety Commission Fact Sheet*

Plaintiff claims error in the exclusion of a "Product Safety Fact Sheet" published in 1979 by the Consumer Product Safety Commission. When questioning Tappan's officer in charge of research and development, plaintiff's attorney read various statements to the witness from the fact sheet, including the following :

Flammable vapors from contact cement, kerosene, and gasoline can be ignited by a pilot light or burner and cause the whole room to be engulfed in flames.

. . . .

Never use flammable liquids around a gas range. Pilot lights are often forgotten and they can easily ignite flammable vapors which flow from one part of the room to the other.

The witness agreed with the statements. Plaintiff asserts that it was error to exclude the actual fact sheet from evidence because it deprived him of proof from a well-respected source, the Consumer Product Safety Commission, that the use of flammables in the vicinity of pilot lights was foreseeable, common and dangerous.

Plaintiff maintained that this was relevant to counter Tappan's defense that it did not expect consumers to use flammables around stoves.

The trial court's ruling on the fact sheet is not part of the record on appeal. References to the exhibit in the record indicate, however, that the court considered events in 1979, nine years after the design of the stove, to be irrelevant.

In a dispute over the relevancy of evidence:

[T]he question to be resolved is as to whether there is a logical or rational connection between the fact which is sought to be proved and a matter of fact which has been made an issue in the case. . . .
While remoteness in point of time does not necessarily render evidence irrelevant, it may do so where the elapsed time is so great as to negative all rational or logical connection between the fact sought to be proved and the remote evidence offered in proof thereof.

*Hart v. State,* 75 Wis. 2d 371, 386, 249 N.W.2d 810, 816 (1977), quoting from 1 Jones, *Evidence* sec. 137 at 238, 239 (4th ed.), as approved by *Shapiro v. Klinker,* 257 Wis. 622, 626–27, 44 N.W.2d 622, 624 (1950).

Plaintiff argues that under this standard, where nothing between 1970 and 1979 changed the characteristics of flammable liquids or the forgetfulness of consumers, a logical connection exists between Tappan's culpability in 1970 and what the Consumer Product Safety Commission said in 1979.

This argument overlooks the fact that plaintiff's counsel was allowed to elicit answers from Tappan's witness agreeing to the characteristics of flammable liquids and the tendency of consumers to forget about pilot lights. What plaintiff's objection boils down to is that he was prevented from showing that the Consumer Product Safety Commission made the statements which were read to the witness. What the commission said in 1979 has

no logical or rational connection with what defendant should have thought in 1970. *See Schenck v. Pelkey,* 176 Conn. 245, 405 A.2d 665, 669 (1978), holding that standards promulgated by the Consumer Product Safety Commission nine years after the sale of the product and six years after the injury in question were properly excluded as irrelevant.

The trial court did not err in excluding the product safety fact sheet from evidence.

*By the Court.*—Judgment affirmed.