James H. WEBER, Plaintiff-Respondent-Cross Appellant,†

v.

CHICAGO & NORTHWESTERN TRANSPORTATION COMPANY, a foreign corporation, Defendant-Appellant-Cross Respondent.††

Court of Appeals

*No. 93–1119. Oral argument January 19, 1994.—Decided February 14, 1995.*

(Also reported in 530 N.W.2d 25.)

†Petition to review denied.
††Petition for cross review denied.

For the defendant-appellant-cross respondent there were briefs and oral argument by *Cannon & Dunphy, S.C.*, with *Lynn R. Laufenberg*, of Milwaukee.

For the plaintiff-respondent-cross appellant there were briefs by *Borgelt, Powell, Peterson & Frauen, S.C.*, with *M. Christine Cowles* and *Phyllis M. Santocroce*, of Milwaukee. There was oral argument by *M. Christine Cowles*.

Before Sullivan, Fine and Schudson, JJ.

SCHUDSON, J. Chicago and Northwestern Transportation Company (CNW) appeals from the judgment, following the retrial in this action, in which a jury awarded James H. Weber $135,000 for past wage loss, and another $135,000 for future loss of earning capacity, as a result of injuries he suffered while working as a welder for CNW. CNW argues that the trial court erroneously exercised discretion in ordering a new trial on the subject of damages, following the first jury's determination that Weber should be awarded $27,000 for past wage loss, and $30,000 for future loss of earning capacity. CNW also argues for a new trial contending that, in the first trial, the trial court erred in ruling as matters of law that: (1) Weber was not contributorily negligent; and (2) evidence of CNW's vocational rehabilitation program was barred by the collateral source rule. Weber cross-appeals from the second trial court's denial of interest on the awards for

the period between the date of the first verdict and the date of the judgment following the retrial.

We conclude that the trial court erred in ordering a new trial on damages. We also conclude, however, that by moving for entry of judgment on the verdict following the first trial, CNW waived its arguments seeking a new trial. Accordingly, we reverse the judgment following the second trial and the order for a new trial, and we direct the trial court to enter judgment for Weber consistent with the jury verdicts in the first trial. Resolution on this basis renders the remaining issues of the appeal moot. We do, however, address the cross-appeal and conclude that the trial court erred in determining that postverdict/prejudgment interest could not be awarded. We therefore reverse on the cross-appeal and direct, pursuant to § 814.04, STATS., that interest be computed on the first verdict until the entry of judgment.

## I. CNW'S APPEAL

Weber brought this action under 45 U.S.C. §§ 51-60, the Federal Employer's Liability Act (FELA), for injuries he suffered when he fell from a ladder while welding the side of a railroad car. The jury returned a verdict finding CNW causally negligent. The jury found damages in several categories including $27,000 for past loss of wages and $30,000 for future loss of earning capacity. The trial court, however, granted Weber's postverdict motion under § 805.15(1), STATS., to set aside the jury's verdict with regard to those two damage categories, and denied CNW's motion for entry of judgment on the verdict. CNW argues that the trial court erred in ordering a new trial because, in the first trial, there was credible evidence to support the jury's verdict. CNW is correct.

Although in their appellate briefs the parties argued over the appropriate standard of review in this case, at oral argument before this court the parties agreed that if there was "any credible evidence" to support the jury's verdict, then the trial court erred in ordering a new trial.[1] We agree that the "any credible evidence" standard is appropriate. "State courts are required to apply federal substantive law in adjudicating FELA claims." *Monessen v. Southwestern Ry. Co. v. Morgan*, 486 U.S. 330, 335 (1988). Accordingly, only when there is no credible evidence to support a jury's verdict can a trial court set aside the jury's finding. As the Supreme Court explained:

> Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where . . . there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable.

*Lavender v. Kurn*, 327 U.S. 645, 653 (1946).

The parties also agree that the federal and Wisconsin standards are compatible, and they point to Wisconsin authorities. As the supreme court explained

---

[1] In a supplemental letter to this court, Weber resumed argument on the standard of review, based on this court's recent decision in *Macherey v. Home Ins. Co.*, 184 Wis. 2d 1, 516 N.W.2d 434 (Ct. App. 1994). *Macherey* does not alter our analysis of the appropriate standard of review in this case.

in *Giese v. Montgomery Ward, Inc.*, 111 Wis. 2d 392, 331 N.W.2d 585 (1983):

> Sec. 805.15 . . . allows a trial court to order a new trial on the following grounds: (1) errors in the trial; (2) verdict is contrary to law or the weight of evidence; (3) damages are excessive or inadequate; (4) newly discovered evidence; or (5) in the interest of justice. In resolving this issue we must therefore examine the trial court's grounds for ordering a new trial. If any one ground is sufficient then the order must be affirmed.

*Id.* at 400-401, 331 N.W.2d at 590. Further, the standard for reviewing a trial court's order for a new trial varies according to the grounds on which the new trial was ordered. *See id.* at 408, 331 N.W.2d at 593. Moreover, to ascertain the grounds for the trial court decision, we are not confined to the terms of the written order, but will examine the oral decision to understand the trial court's reasoning. *See id.* at 401, 407-408, 331 N.W.2d at 590, 593 (supreme court's examination of trial court's order for a new trial included the trial court's reasoning articulated in underlying memorandum decision).

Here, the trial court's order on motions after verdict stated "that the jury's Verdict with respect to those items of damage is contrary to the weight of the evidence and not supported by any credible evidence in the record." As we will explain, however, that conclusion rested on an erroneous legal conclusion about whether a jury's determination of damages could be based on speculation. Accordingly, as was the case in *Giese*, here we also review a trial court's order for a new trial based on its assessment that "the verdict was against the weight of the evidence." Under the circumstances, according to *Giese*, "the standard of review

that we must apply . . . is that the verdict must be approved if there is any credible evidence which supports it." *Id.* at 408, 331 N.W.2d at 593. The evidence must be viewed in the light most favorable to the verdict. *See id.* at 409, 331 N.W.2d at 594. "The fact that the trial judge may not concur in the jury's verdict or that a different jury might reach a different conclusion is not grounds for the granting of a new trial." *Bartell v. Luedtke*, 52 Wis. 2d 372, 379, 190 N.W.2d 145, 149 (1971).

In this case, the trial court granted Weber's motion for a new trial, apparently accepting his theory as argued in motions after verdict. Maintaining that there was no credible evidence to support portions of the jury's verdict, counsel contended:

> The minimum amount that could have been awarded under the expert testimony for past wage loss was a hundred and five thousand plus dollars, based upon the testimony of the expert witnesses, and the minimum amount that could have been awarded based upon the only expert testimony admitted in the trial for future loss of earning capacity was in excess of $305,000 . . . . [T]he jury must pay some attention to that expert testimony. . . . [T]he jury cannot ignore that expert testimony.

The trial court agreed, stating:

> There is no evidence in this case that there was an "X" dollars earnings loss over an "X" period of time or one that would justify $30,000, and the same is true for the past loss of wages. There is no rational way that you can explain based upon the evidence that the jury heard a $27,000 award.

Further, the trial court reasoned:

> The question is what did the jury do with the evidence that it heard? And the problem I have is that you can only speculate as to the basis. [CNW] cannot articulate any basis for the numbers that came"that were presented by the jury. It's based on pure speculation. . . . We can only speculate as to what they did.

Later in its oral decision the trial court further explained:

> We would have to speculate because the jury had to speculate. No evidence of record has been cited to the Court nor can any be found that supports that particular award. I don't know how the jury did it. Speculation is one way to consider how they did it because that's what they must have done, and that's not what they're allowed to do.
>     . . . [Y]ou have to search, and you have to speculate and, if we have to speculate, the jury had to speculate, and those awards can't be sustained.

Thus, the trial court explained, a verdict of zero damages would have been more justifiable, as a matter of law, because it would have reflected the total rejection of Weber's theory rather than partial rejection that inevitably must have led to a determination of damages based on speculation.

The trial court's reasoning was erroneous. In concluding that "[CNW] cannot articulate any basis for the numbers that came," the trial court inaccurately characterized CNW's argument at the motions after verdict, which summarized a number of ways in which the jury could have considered the evidence. CNW had argued:

> [T]he credible evidence is that Mr. Weber was working doing something and doing odd jobs around this body shop during that two-year period that he was

allegedly unable to work. The jury could have con-
cluded from that that he was indeed able to work,
and that forms part of the basis for their award. So
that the two year period may not, in the jury's mind,
have been etched in stone either.

. . . .

There was testimony presented that Mr. Weber
could be a long haul truck driver and earned a wage
comparable to his wage that he earned while
employed by the railroad. There was also testimony
that he could be a welder. There was also testimony,
however, that he had to go out and find the jobs, and
the jury could have reasonably concluded that he
needed some time to do that. The jury's award of 30
grand for a loss of future earning capacity may be a
reflection of the jury's intent to give Mr. Weber a
year or so to find a job. The jury's award may also
reflect its opinion that while Mr. Weber has the
capacity to earn a wage comparable to his pre-
injury wage, he might not receive the same benefits,
and their award perhaps reflects a diminution in
these benefits he might be able to receive. The
award could also evidence the jury's opinions that
while the plaintiff currently has a job, there is a
current differential between what he is earning and
what he could have expected if he had stayed with
the railroad. The jury may have decided to award
him something for that current differential with the
idea that though he is currently employed below his
capacity to earn, he should receive something for a
reasonable time until he can get that job that is at
his earning capacity.[2]

Thus, although admittedly CNW did not *know* the pre-
cise basis for the jury's conclusion, it indeed could and

___

[2] At oral argument, counsel for CNW referred to several
other evidentiary bases that, consistent with the trial record,
also could have led to the jury's determination.

did articulate a number of evidentiary bases for the jury's award. To reject the verdict because, in the first place, the parties and the trial court could only speculate as to the precise basis, and because, in the second place, the jury also would have had to reach its own estimation of damages based not only on the expert testimony but on other evidentiary factors as well, is inconsistent with settled principles that provide a jury with substantial discretion in determining damages.

"The amount of damages awarded is a matter resting largely in the jury's discretion." *Zintek v. Perchik*, 163 Wis. 2d 439, 480, 471 N.W.2d 522, 538 (Ct. App. 1991). Moreover, the jury is not bound by an expert's estimate of damages. "It is the fact finder's duty to determine whether the facts underlying an expert opinion are true. The credibility, sufficiency and weight of expert evidence are for the fact finder to determine." *Tony Spychalla Farms, Inc. v. Hopkins Agric. Chem. Co.*, 151 Wis. 2d 431, 441, ʼ44 N.W.2d 743, 748 (Ct. App. 1989) (citation omitted). Indeed, a jury certainly may conclude that damages are not as great as stated by an expert witness. *See Fischer v. Cleveland Punch & Shear Works Co.*, 91 Wis. 2d 85, 101-102, 280 N.W.2d 280, 287-288 (1979). In *Fischer,* the court recognized that "the jury could reasonably have concluded that Fischer's loss of earning capacity was not as great as [the expert witness's] estimate," and that the jury's award was "a reasonable attempt to place a monetary value on the . . . loss of earnings and earning capacity, a necessarily uncertain endeavor." *Id.* at 101-102, 280 N.W.2d at 288.

In this case, although the jury's determinations undoubtedly resulted, in part, from its inferences drawn from the evidence, such determinations are valid. Specifically, in a FELA case:

It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded [jurors] may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference.

*Lavender*, 327 U.S. at 653; *see also Milwaukee Rescue Mission, Inc. v. Redevelopment Auth.*, 161 Wis. 2d 472, 481-490, 468 N.W.2d 663, 667-671 (1991) (jury has discretion to consider factors underlying an expert's opinion on value and to choose between competing inferences from the evidence so as to arrive at a damage figure that does not track any expert's opinion); *Ward v. H.B. Zachry Const. Co.*, 570 F.2d 892, 898 (10th Cir. 1978) ("Once the cause of damage is established, those losses may be recovered despite some speculation as to their amount.").

Thus, we conclude that the amount of damages clearly was in dispute in this case. The parties elicited substantial testimony concerning Weber's ability to work both before and after the accident. Although CNW did not call any experts to counter Weber's expert testimony, it challenged the expert conclusions through cross-examination and the presentation of other evidence. Even where one party's expert is not countered by any expert on the other side, a jury can reject an expert's opinion based on other evidence in the case. *Krueger v. Tappan Co.*, 104 Wis. 2d 199, 203, 311 N.W.2d 219, 222 (Ct. App. 1981). Indeed, in this case, the trial court instructed the jury regarding Weber's duty to mitigate damages and told the jury that if he failed to seek work or exploit the advantages

available to him, the jury "should reduce the amount of his damages by the amount he could have reasonably realized if he had taken advantage of such opportunity." The jury was free to draw its inferences from the competing evidence and, as it also was properly instructed, to give expert testimony the credit it deemed appropriate. Credible evidence supported the jury's verdict and, accordingly, we conclude that the trial court erred in denying CNW's motion for entry of judgment following the first trial.

As noted, CNW also argues for a new trial contending that the trial court erroneously determined two legal issues. In its motions after verdict, however, CNW argued that "judgment should be entered on the verdict." Counsel added, "If the Court decides not to do so, then I would at this point—I would at that point move the Court for a new trial on the liability issues . . . ." Similarly, in its brief in support of motions after verdict, CNW sought a new trial, "[s]hould the court not enter [CNW's] proposed Order for Entry of Judgment on the Verdict." Having sought judgment on the original verdict, and now having prevailed on appeal such that it will be granted that judgment, CNW has waived the remaining issues it sought to pursue.

## II. WEBER'S CROSS-APPEAL

The issue in Weber's cross-appeal is whether *Monessen Southwestern Railway v. Morgan*, 486 U.S. 330 (1988), precludes postverdict/pre-entry of judgment interest as an item of costs under § 814.04, STATS. *Monessen* held that a Pennsylvania statute that allowed interest from the date the plaintiff filed an action until verdict as an element of the plaintiff's state-court compensatory damages claim contravened FELA. We conclude that Weber is entitled to

637

postverdict/prejudgment interest under § 814.04, STATS., and therefore we reverse.[3]

The first jury verdict was for $138,568.22,[4] with past wage loss and future loss of earning capacity totalling $57,000. The trial court ordered new trial on the past and future wage loss awards but confirmed all other damage awards. The second jury verdict on past wage loss and future loss of earning capacity was $270,000. On postverdict motions, the trial court denied postverdict/pre-entry of judgment interest on both verdicts, ruling that under *Monessen* postverdict interest was prohibited. This presents a question of law, which we review *de novo. See Ball v. District No. 4, Area Bd.*, 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984) (questions of law independently reviewed on appeal).

Weber argues that the "prejudgment interest" in *Monessen* was referring to interest that was part of the plaintiff's compensatory damages claim, and that this is entirely different from the "item of cost"-type interest he is seeking. Weber also argues that to deny postverdict/pre-entry of judgment interest punishes state-court FELA litigants because, under Federal Civil Procedure Rule 58,[5] "unless the court otherwise

---

[3] We do not address any impact of *Monessen Southwestern Railway v. Morgan*, 486 U.S. 330 (1988), on the reference to § 807.01(4), STATS., in § 814.04(4), STATS.

[4] The first jury verdict included $19,568.22, which CNW paid for past medical expenses and which the trial court entered on the jury verdict, $2,000 for future·medical and hospital expenses, $27,000 for past wage loss, $30,000 for future loss of earning capacity, $30,000 for past pain, suffering and disability, and $30,000 for future pain, suffering and disability.

[5] Federal Civil Procedure Rule 58, in relevant part, states:

orders," judgment is immediately entered once a jury verdict is handed down and, under 28 U.S.C. § 1961, "interest shall be calculated from the date of the entry of the judgment."[6] Postverdict motions under Federal Civil Procedure Rule 59 seek to "open" or "amend" the entered judgment. In contrast, under Wisconsin's rules of civil procedure, final judgments are not entered until after postverdict motions,[7] and under § 814.04(4), STATS., "if the judgment is for the recovery of money, *interest* at the rate of 12% per year *from the time of verdict . . . until judgment is entered* shall be computed by the clerk and added to the costs." (Emphasis added.) Thus, Weber argues, under the trial court's reasoning, any delay caused by postverdict matters deprives state-court FELA litigants of interest they would otherwise receive if in federal court.

Weber is correct. *Monessen* held that state courts cannot award prejudgment interest to state-court FELA plaintiffs. *Monessen*, 486 U.S. at 334-339. The Pennsylvania statute at issue in *Monessen*, however,

---

Subject to the provisions of 54(b): (1) upon a general verdict of a jury, or upon a decision by the court that a party shall recover only a sum certain or costs or that all relief shall be denied, the clerk, unless the court otherwise orders, shall forthwith prepare, sign, and enter the judgment without awaiting any direction by the court; (2) upon a decision by the court granting other relief, or upon a special verdict or a general verdict accompanied by answers to interrogatories, the court shall promptly approve the form of the judgment, and the clerk shall thereupon enter it. . . . Entry of the judgment shall not be delayed, nor the time for appeal extended, in order to tax costs or award fees, except that, when a timely motion for attorneys' fees is made under Rule 54(d) (2).

[6] There is no federal prejudgment interest statute.

[7] *See* §§ 805.14(5)(a) & 805.16(3), STATS. *But see* § 805.17(3), STATS. (motions for reconsideration "made not later than 20 days after entry of judgment").

639

which allowed for "prejudgment" interest, stated that courts were to add "damages for delay" at a 10% interest rate to compensatory damages from the latter of the date the plaintiff filed the action or one year after the cause of action accrued to the date of the verdict if the plaintiff's recovery exceeded 125% of the defendant's pretrial settlement offer. *Id.* at 333 & n.1. Thus, the Pennsylvania statute entered an area of substantive law governed by federal law.

"FELA cases adjudicated in state courts are subject to state procedural rules, but the substantive law governing them is federal." *St. Louis S.W. Ry. Co. v. Dickerson*, 470 U.S. 409, 411 (1985). *Monessen* rejected the characterization of the Pennsylvania interest statute as "a procedural device to relieve court congestion." *Monessen*, 486 U.S. at 336. The Supreme Court noted how the size of the award had been increased by the state statute by more than 20%, and stated that "prejudgment interest constitutes too substantial a part of a defendant's potential liability" in order to just follow state interest rules. *Id.* at 335-336. The Supreme Court noted that neither FELA nor the federal interest statute allowed for "prejudgment" interest, and concluded that based on the prior common law rule not allowing prejudgment interest and based on Congress's continued refusal to enact prejudgment interest legislation, there could be no recovery for prejudgment interest in FELA cases. *Id.* at 336-339.

Weber is correct that the interest at issue in *Monessen* was different than that at issue here. Further, there is no Wisconsin rule comparable to Federal Rule of Civil Procedure 58, which contains the directive that the clerk "shall" enter judgment "promptly" or "forthwith" upon the rendering of a verdict. In Wisconsin,

preparation of a judgment may be left to counsel and may not necessarily be á function carried out by court personnel. These differences in postverdict procedures in the federal ánd Wisconsin state court systems should not work a financial penalty on a plaintiff who chooses a state forum in which to pursue a federal statutory (FELA) remedy. Therefore, the return of a verdict by a Wisconsin state-court jury in a FELA case could be considered, for purposes of calculating interest, the equivalent of the "entry of judgment" under 28 U.S.C. § 1961. Accordingly, we conclude that Weber was entitled to postverdict/prejudgment interest under § 814.04, STATS. We direct interest to be computed from the date of the first verdict, excluding the $19,568.22 for which CNW had previously paid for past medical expenses, until the date judgment was entered.[8]

---

[8] CNW also argues in its appellate brief that Weber, in essence, forfeited his right to postverdict/prejudgment interest because he moved for and was granted a new trial on damages, and because he did not seek entry of judgment on the verdict. According to the record and the appellate submissions, however, these are new arguments raised for the first time on appeal and, therefore, we decline to address them. *See Wirth v. Ehly*, 93 Wis. 2d 433, 443-444, 287 N.W.2d 140, 145 (1980) (issues raised for the first time on appeal generally not reviewed by court of appeals). In fact, CNW's argument regarding Weber's failure to seek entry of judgment on the verdict was not raised until submissions opposing Weber's request for reconsideration for this panel to address the cross-appeal. Additionally, CNW's entire argument in its appellate briefs on the issue of whether Weber forfeited the right to interest because he moved for a new trial on damages is as follows:

> It is curious that plaintiff should complain that he is entitled to post-verdict interest since it was the plaintiff who rejected the first damage award, and it was the plaintiff who submitted new evidence of damages in Trial II. As a result of plaintiff's own

*By the Court.*—Judgment and order reversed and cause remanded with directions.

CNW cites no legal authority to support this argument; therefore, we decline to address it for this reason as well. *See Lechner v. Scharrer*, 145 Wis. 2d 667, 676, 429 N.W.2d 491, 495 (Ct. App. 1988); *see also* § 809.19(1)(e) & (3), STATS. (respondent's appellate arguments regarding an issue to contain citations to legal authorities).

The concurrence/dissent has no complaint with interest running on the $62,000 from the first verdict until judgment was entered but disagrees that interest should run on the $57,000 from the first verdict, which we reinstated in the main appeal. The concurrence/dissent argues that Weber should not receive interest on the $57,000 because he never asked for interest on the $57,000 from the first verdict. The concurrence/dissent maintains that Weber should have argued to the trial court that the $260,801.04 from the second verdict "subsumed" the previously rejected $57,000 and thus acted as the minimum upon which to base interest in the second verdict. Restated, the concurrence/dissent contends that in postverdict motions following the second trial, Weber should have argued for: (1) interest to run on the $62,000 from the first verdict; (2) interest on $57,000 from the second verdict to run from the date of the first verdict until judgment; and (3) interest on the second verdict less $57,000 from the date of the second verdict. The concurrence/dissent maintains that the $57,000 then was, in essence, liquidated from the time of the first verdict, and, therefore, Weber simply failed to request interest on any amounts other than the $62,000.

While as a matter of optimum trial advocacy, the concurrence/dissent makes an interesting argument, the flaw in the concurrence/dissent's reasoning is obvious. Of course Weber did not ask for interest on $57,000 from the second verdict to run from the date of the first verdict because that portion of the first

FINE, J. *(concurring in part; dissenting in part).* The majority opinion awards to James H. Weber post-verdict, pre-judgment interest on $57,000 even though Weber *never*, prior to the filing of his motion for reconsideration (because our original decision mistakenly did not address the merits of his cross-appeal), asked for post-verdict, pre-judgment interest on that amount. Yet, the majority opinion, in footnote 8, chastises Chicago and Northwestern Transportation Company for waiting until its response to Weber's motion for reconsideration to argue that Weber is not entitled to post-verdict, pre-judgment interest on the $57,000. Frankly, I do not understand the distinction that the majority apparently sees between Weber's failure to raise an issue, and Chicago and Northwestern's failure to address an issue not raised.

This case comes to us on an appeal and a cross-appeal from the trial court's judgment, filed March 15, 1993, which awarded to Weber "$322,801.04, together with taxable costs, exclusive of interest on the juries' verdicts to the date of entry of judgment." Weber's cross-appeal noted that it was from that portion of the judgment that denied post-verdict, pre-judgment interest. In its order for judgment, the trial court: granted Weber's motion for judgment on that part of the first verdict awarding him $62,000, and, additionally, granted Weber's motion for judgment on the second verdict for $260,801.04, for a total of $322,801.04. The

verdict had been disallowed by the trial court. Further, had the main appeal been affirmed, under § 814.04, STATS., any interest on damages under the second award would have been calculated from the date of the second verdict. Because we reinstate the first verdict, interest shall run on the entire amount of the first verdict minus the $19,568.22 CNW had previously paid for past medical expenses.

order for judgment further provided that "plaintiff shall <u>not</u> recover interest on the verdicts [i.e., the $62,000 awarded by the first jury, and the $260,801.04 awarded by the second jury] from the respective dates of those verdicts to the date judgment is entered." (Emphasis in original.) We have concluded, correctly in my view, that Weber is entitled to post-verdict, pre-judgment interest on the juries' verdicts. Thus, we have reversed the trial court's judgment denying such interest on the $62,000 from the first verdict, and I agree with that. The majority errs, in my view, when it *sua sponte* directs that post-verdict, pre-judgment interest be awarded on the $57,000 dating back to the first verdict even though Weber did not seek that relief prior to the filing of his motion for reconsideration.

We are an appellate court, and may only review a "final judgment or a final order of a circuit court," § 808.03(1), STATS., except when leave is granted to appeal from interlocutory judgments or orders, § 808.03(2), STATS. An appeal or cross-appeal from a final judgment or order also brings for appellate review "all prior nonfinal judgments, orders and rulings adverse to the appellant [or cross-appellant] and favorable to the respondent [or cross-respondent] made in the action or proceeding not previously appealed and ruled upon." RULE 809.10(4), STATS. The relief that we may order on appeal is limited: "an appellate court may reverse, affirm or modify the judgment or order as to any or all of the parties; may order a new trial; and, if the appeal is from a part of a judgment or order, may reverse, affirm or modify as to the part appealed from." Section 808.09, STATS.

As noted, Weber never sought post-verdict, pre-judgment interest on the $57,000 prior to the filing of his motion for reconsideration, and such interest was,

accordingly, never denied to Weber by the trial court in any order or judgment, whether interlocutory or final.[1] Per force of logic and common sense, the $57,000 awarded by the first jury, and deemed inadequate by Weber, was subsumed in the $260,801.04 awarded by the second jury. Weber should have, therefore, sought post-verdict, pre-judgment interest on the $260,801.04 as follows: post-verdict, pre-judgment interest on $57,000 from the date of the first verdict; post-verdict, pre-judgment interest on $203,801.04 ($260,801.04 minus $57,000) from the date of the second verdict. He did not. There is thus no order or judgment, final or interlocutory, before us on Weber's entitlement *vel non* to post-verdict, pre-judgment interest on the $57,000 dating back to receipt of the first verdict. I dissent from the majority's determination to plug the procedural hole left by Weber's lawyer; we are judges, not advocates.

---

[1] Weber sought and was granted a new trial as to the $57,000. We have, correctly in my view, reversed the trial court's interlocutory order granting that relief.